### UNITED STATES COURT OF APPEALS
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

VALERIE WHITE, EVA JUNEAU,
and PETER BETANCOURT,
individually and on behalf of a class
of all other persons similarly
situated,
Plaintiffs-Petitioners,

v.

HILTON HOTELS RETIREMENT
PLAN, HILTON WORLDWIDE,
INC., GLOBAL BENEFITS
ADMIN. COMMITTEE, MARY
NELL BILLINGS, S. TED
NELSON, CASEY YOUNG, and
UNNAMED MEMBERS OF
GLOBAL BENEFITS ADMIN.
COMMITTEE,
Defendants-Respondents.

Petition for Leave to Appeal
under FRCP 23(f) from Order
in Civil Action #16-856 (CKK)

**Petition by Plaintiffs-Petitioners for Leave to Appeal Pursuant to FRCP 23(f)**

Stephen R. Bruce
Stephen R. Bruce Law Offices
1667 K St., NW, Suite 410
Washington, DC 20006
202-289-1117
stephen.bruce@prodigy.net

Attorney for Plaintiffs-Petitioners

## Table of Contents

The Standard for an FRCP 23(f) Petition. . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Relevant Background and Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Questions Presented. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Relief Sought. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Reasons for Granting Petition. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

1.     Plaintiffs' Petition Fits All of the Circumstances for a Rule 23(f) Petition. . 8

2.     The Proposed Class Definition in This Case Is *Not* a Fail-Safe Definition. . 9

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Certificate of Compliance and Service

Certificate of Parties and Amici and Corporate Disclosure Statement

i

## Table of Authorities

### Cases

*Afghan & Iraqi Allies v. Pompeo*, 334 F.R.D. 449 (D.D.C. 2020) ......... 16-18

*Bais Yaakov of Spring Valley v. ACT, Inc.*, 328 F.R.D. 6
(D. Mass. 10/24/2018) ..................................................................... 17-18

*In re Brewer*, 863 F.3d 861 (D.C. Cir. 2017) ...................................................2

*Brown v. DirecTV, LLC*, 330 F.R.D. 260 (C.D. Cal. 3/29/2019)..................19

*Byrd v. Aaron's Inc.*, 784 F.3d 154 (3d Cir. 2015)........................................13

*Campbell v. AMTRAK*, 311 F.Supp.3d 281 (D.D.C. 2018) ........................16

*Cordoba v. DIRECTV, LLC*, 942 F.3d 1259 (11th Cir. 2019) ....................14

*Day v. Humana Insurance Co.*, 335 F.R.D. 181 (N.D. Ill. 6/1/2020)...........17

*In re District of Columbia*, 792 F.3d 96 (D.C. Cir. 2015)..............................2

*Doe v. Trinity Logistics, Inc.*, 2018 WL. 1610514, 2018 U.S. Dist.
LEXIS 56254 (D. Del. 4/3/2018) .............................................................19

*Donaca v. Metropolitan Life Insurance Co.*, 2014 WL. 12597152,
2014 U.S. Dist. LEXIS 198899 (C.D. Cal. 1/22/ 2014)..........................21

*EQT Prod. Co. v. Adair*, 764 F.3d 347 (4th Cir. 2014).................................14

*Grubb v. Green Tree Servicing, LLC*, 2017 WL. 3191521, 2017 U.S.
Dist. LEXIS 117465 (D.N.J. 7/26/2017)..................................................20

*Hoyte v. District of Columbia*, 325 F.R.D. 485 (D.D.C. 2017)....................17

*Johansen v. One Planet Ops, Inc.*, 2018 WL. 1558263, 2018 U.S. Dist.
LEXIS 47776 (S.D. Ohio 3/5/2018).........................................................19

*In re Johnson*, 760 F.3d 66 (D.C. Cir. 2014)...................................................2

*Kenneth R. v. Tri-County CAP, Inc. v. Hassan*, 293 F.R.D. 254
  (D.N.H. 9/17/2013)..................................................................21

*Kifafi v. Hilton Hotels Ret. Plan*, 701 F.3d 718 (D.C. Cir. 2012).............2, 15

*Kifafi v. Hilton Hotels Ret. Plan*, 752 Fed.Appx. 8 (D.C. Cir. 2019) .............3

*In re Lorazepam & Clorazepate Antitrust Litigation*, 289 F.3d 98
  (D.C. Cir. 2002)......................................................................2

*Mattson v. New Penn Finance, LLC*, 2018 WL. 6735088, 2018 U.S. Dist.
  LEXIS 218627 (D. Or. 11/6/2018)...........................................19

*McCullough v. City of Montgomery*, 2021 WL. 2044900, 2021 U.S. Dist.
  LEXIS 96861 (M.D. Ala. 5/21/2021)........................................18

*Melgar v. CSK Automobile, Inc.*, 2015 WL 9303977, 2015 U.S. Dist.
  LEXIS 170833 (N.D. Cal. 12/22/2015) .....................................20

*Messner v. Northshore University HealthSystem*, 669 F.3d 802
  (7th Cir. 2012) ............................................................... 4, 13-15

*Mullins v. Direct Digital, LLC*, 795 F.3d 654 (7th Cir. 2015),
  *cert. denied*, 577 U.S. 1138 (2016) ...................................... 12-13

*In re Nexium Antitrust Litigation*, 777 F.3d 9 (1st Cir. 2015)......................13

*Orduno v. Pietrzak*, 932 F.3d 710 (8th Cir. 2019) .........................................13

*Panacci v. A 1 Solar Power, Inc.*, 2015 WL. 3750112, 2015 U.S. Dist.
  LEXIS 77294 (N.D. Cal. 6/15/2015) ........................................20

*Perez v. State Farm Mutual Automobile Insurance Co.*, 2011 U.S. Dist.
  LEXIS 164821 (N.D. Cal. 7/5/2011) ........................................21

*Quevedo v. Macy's, Inc.*, 2011 WL. 13124445 (C.D. Cal. 3/9/2011) ...........18

*In re Rail Freight Fuel Surcharge Antitrust Litigation*, 725 F.3d 244
  (D.C. Cir. 2013)......................................................................2

*Ramirez v. United States Immigration & Customs Enf't*, 338 F.Supp.3d 1
(D.D.C. 2018) ........................................................................ 16-17

*In re Rodriguez*, 695 F.3d 360 (5th Cir. 2012) ..................................13

*Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125 (9th Cir. 2016) ...........14

*Sagar v. Kelly Automotive Group, Inc.*, 2021 WL. 5567408, 2021 U.S.
Dist. LEXIS 227781 (D. Mass. 11/29/2021).............................................18

*Snyder v. Ocwen Loan Servicing, LLC*, 258 F.Supp.3d 893 (N.D. Ill.
2017).................................................................................20

*In re TD Bank, N.A. Debit Card Overdraft Fee Litigation*, 2018 U.S.
Dist. LEXIS 243064 (D.S.C. 6/20/2018) .....................................19

*In re Toll Roads Litigation Penny Davidi Borsuk*, 2020 WL. 9597845,
2020 U.S. Dist. LEXIS 254278 (C.D. Cal. 12/30/2020)..........................18

*In re Veneman*, 309 F.3d 789 (D.C. Cir. 2002) ...............................2

*Weidenhamer v. Expedia, Inc.*, 2015 WL. 7157282, 2015 U.S. Dist.
LEXIS 154750 (W.D. Wash. 11/13/2015)...............................................20

*Young v. Nationwide Mutual Insurance Co.*, 693 F.3d 532
(6th Cir. 2012) ................................................................ 12-13

## Statutes and Rules

ERISA §3(5), 29 U.S.C. 1002(5).................................................4, 6

FRCP 23(c)(1)  .....................................................................15

FRCP 23(f)  .........................................................................1, 21

## Miscellaneous

Advisory Committee Notes for Federal Rules ....................................................1

Alba Conte & Herbert Newberg, *Newberg on Class Actions*, §8:12
(4th ed. 2002)...................................................................................15

Jordan S. Elias, "The Ascertainability Landscape and the Modern
Affidavit," 84 *Tenn. L. Rev.* 1 (2017).........................................................9

*Moore's Federal Practice and Procedure* § 23:21 (3d ed. 2016) .................15

Note, "Class Ascertainability," 124 *Yale L.J*. 2354 (2015)...........................14

**The Standard for an FRCP 23(f) Petition**

Since 1998, Fed. R. Civ. Proc. 23(f) has authorized parties to petition for interlocutory review of class certification orders. Grants or denials of such petitions are in the "discretion of the court of appeals." *See* 1998 and 2007 Advisory Committee Notes. Rule 23(f) was adopted in recognition that "[a]n order denying certification may confront the plaintiff with a situation in which the only sure path to appellate review is by proceeding to final judgment on the merits of an individual claim that, standing alone, is far smaller than the costs of litigation." 1998 Advisory Committee Notes. The Advisory Committee Notes recognize that permission to appeal under Rule 23(f) "is most likely to be granted when the certification decision turns on a novel or unsettled question of law." The 1998 Advisory Committee Notes further contemplate that a district court's decision on class certification may offer "advice on the desirability of appeal."

On the basis of these considerations, this Circuit has identified three non-exclusive categories of "circumstances" in which review under Rule 23(f) "ordinarily is appropriate":

(1)   "when there is a death-knell situation for either the plaintiff or defendant that is independent of the merits of the underlying claim, coupled with a class certification decision by the district court that is questionable";

1

(2)    "when the certification decision presents an unsettled and fundamental issue of law relating to class actions"; and

(3)    "when the district court's decision is manifestly erroneous."

*In re Brewer*, 863 F.3d 861, 873-76 (D.C. Cir. 2017); *accord*, *In re District of Columbia*, 792 F.3d 96, 98 (D.C. Cir. 2015); *In re Johnson*, 760 F.3d 66, 71 (D.C. Cir. 2014); *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 253 (D.C. Cir. 2013); *In re Veneman*, 309 F.3d 789, 793-94 (D.C. Cir. 2002); *In re Lorazepam & Clorazepate Antitrust Litig.*, 289 F.3d 98, 99-100 (D.C. Cir. 2002).

**Relevant Background and Facts**

On cross-appeals of the related *Kifafi v Hilton Hotels Retirement Plan* class action, this Court in 2012 ordered the Hilton Defendants to "fund and administer a claim procedure open to all participants whose vesting status turns on nonparticipating service." 701 F.3d 718, 733 (D.C. Cir. 2012). More than 770 participants filed claims under that procedure. 2d Am. Cmplt. (Doc. 50) at ¶32. The Hilton Defendants granted some claims, but declined to vest hundreds of those participants. After exhausting internal appeals, Plaintiffs' counsel filed this action on behalf of three subclasses of participants who were denied benefits. Altogether, the proposed class consists of over 220 individuals. *Id*. at ¶39. [1]

---

[1] Petitioners' counsel advise this Court that an appeal of a decision by the District Court in the related *Kifafi v. Hilton Hotels Retirement Plan* class action

Since January 2018, Plaintiffs' counsel have tried unsuccessfully to have this case certified as a class action. The District Court denied the first motion to certify "without prejudice" on the ground that the disposition of a pending motion by Plaintiffs for leave to add an additional named representative for one of three putative subclasses could require further briefing. Doc. 62 (9/28/2018). Subsequent to that order, the District denied the motion for leave to add the additional representative, Doc. 64 (3/31/2019), and then denied Plaintiffs' motion for reconsideration. Doc. 70 (12/17/2019).

Plaintiffs thereafter filed a renewed motion to certify. In response to that motion, the Hilton Defendants argued for the first time that identification of the members of the proposed class was "impossible absent a merits ruling" because the introductory language at the start of the proposed definition referred to persons who "[h]ave vested rights that have been denied by the Hilton Defendants." Doc. 75 at 33-34; Doc. 79 at 33-34.[2] Plaintiffs responded that the reference to "[h]ave vested rights" was "not meant to be distinguishable from '[h]ave been denied

---

was argued on December 3, 2021 before this Court and is under submission. *See* C.A. 21-7025. That appeal challenges the District Court's denial that it retains jurisdiction to hear a contempt motion even though this Court ruled in 2019 that it does. *See* 752 Fed.Appx. 8, 9 (D.C. Cir. 2019).

[2] The Clerk required Defendants to refile Doc. 75.

vested rights to retirement benefits by the Hilton Defendants,' Doc. 76 at 24, and added that, "In a January 4, 2018 discovery conference, Hilton's counsel said they are able to identify the people in each subclass with the class definition, and did not need assistance." *Id.* at 23 n.11.

An October 7, 2020 decision of the District Court denied the renewed motion to certify. Doc. 81 at 1, 10. The decision agreed with the Hilton Defendants that the language at the beginning of the definition about "hav[ing] a vested right" was "fail-safe," but stated that the denial was "without prejudice" "to permit Plaintiffs a final opportunity to amend their class definition in accordance with this Memorandum Opinion" and in recognition that the "fail-safe problem" the District Court had identified "can and often should be solved by refining the class definition." *Id.* at 10, quoting *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012). As indicated, the language the District Court identified as a problem was the clause at the start of the proposed definition describing the members of the class as those who "[h]ave vested rights to retirement benefits that have been denied." Doc. 81 at 6. The District Court found "yet another fail-safe issue" in whether any non-participating service under the second subclass was rendered for Hilton as an "employer" under ERISA §3(5), 29 U.S.C. 1002(5). *Id.* at 14. Because the District Court agreed with the Plaintiffs that

4

these problems were "susceptible to remedy" and could be "solved by refining the class definition," the District Court identified "additional impediments to class certification" that the Plaintiffs should address in any renewed motion. *Id*. at 1.

In response to the October 2020 decision, Plaintiffs filed a second renewed motion with a revised class definition and a memorandum addressing each impediment that the District Court had identified. Doc. 83-1.[3] Plaintiffs addressed the "fail-safe" issue by revising the language to define class membership by whether persons "[h]ave been denied vested rights to retirement benefits by the Hilton Defendants," without regard to whether those persons will ultimately be determined to "have vested rights." *Id*. at 42. After Defendants characterized this revision as "superficial," Plaintiffs explained that "it is an objective fact that [Valerie] White 'has been denied vested rights' by Hilton and it does not require Plaintiffs to prevail on the merits to determine this." Doc. 85 at 4-5.

Plaintiffs also addressed the District Court's issue with the definition of the second subclass by changing the part of the definition that refers to the Defendants "[r]efusal to count non-participating service for vesting purposes notwithstanding

---

[3] A footnote in the March 22, 2022 decision states that "the problems with the second and third proposed subclasses as explained in the Court's Memorandum Opinion remain," without offering any explanation of what Plaintiffs' 43-page memorandum did not address. Mem. Op. at 10 n.5.

that the service was with the 'employer' under ERISA §3(5)" to "notwithstanding that the service was with a hotel property that Hilton operated under a management agreement." Doc. 83-1 at 42; Doc. 85 at 9 n.1.

These revisions made membership in the proposed class "objective" and "ascertainable" and, if adopted, will bind class members to favorable or unfavorable decisions on the merits. As stated, Plaintiffs' counsel had already provided the number of class members in each subclass in the Complaint and Defendants' counsel said they did not need assistance identifying who they are.

The Hilton Defendants' Response nevertheless described Plaintiffs' revisions to the class definition as "superficial," "minor," and "cosmetic[]." Doc. 84 at 1, 12, 23. But Defendants did not describe any less superficial revisions that Defendants wanted Plaintiffs to make. Instead, Defendants focused on other class certification issues that Plaintiffs addressed but the March 22, 2022 decision did not "reach." *See* Mem. Op. at 10 n.5.

The March 22, 2022 decision by the District Court ruled that the "fail-safe" problem "remains the same." Mem. Op. at 7. The District Court reiterated that conclusion and the discussion of "fail-safe" definitions that was in its October 2020 decision. The only part of the discussion that did *not* appear again is about how issues with "fail-safe" definitions "can and often should be solved by refining

6

the class definition" which is "more of an art than a science." *Compare* Doc. 81 at 10 *with* Mem. Op. at 10. The District Court's March 22, 2022 decision never addressed why Plaintiffs' "refining" of the introductory language and the second subclass's definition had not "solved" the fail-safe issues the Court had identified.

**Questions Presented**

1.    Whether it is "manifestly erroneous" for the District Court to deny class certification after the Plaintiffs revised the proposed class definition to address the "fail-safe" issues the District Court identified.

2.    Whether this Court should adopt a "categorical rule" against class certification under Rule 23 when a proposed definition is labeled as "fail-safe," whether or not there is any analysis to show how the label "fits squarely" or to consider the precedents rejecting such a defense when it does not fit the class definition as originally proposed or as revised.

**Relief Sought**

Reversal and remand with instructions to certify the proposed class.

**Reasons for Granting Petition**

1.      **Plaintiffs' Petition Fits All of the Circumstances for a Rule 23(f) Petition.**

Plaintiffs' Petition fits all of the circumstances in which granting a Rule 23(f) Petition is appropriate. First, and most critically, the District Court's March 22, 2022 decision is "manifestly erroneous." The so-called "fail-safe" issue does *not* apply to the proposed class definition as revised by the Plaintiffs because Plaintiffs' revised definition does *not* depend on the ultimate question of liability, but instead uses objective criteria to define who is in the class. Second, the District Court's decision presents an "unsettled and fundamental issue of law relating to class actions" because (1) the decision admits that the rule of law it is applying is "not entirely settled" in this Circuit, Mem. Op. at 7, and (2) this issue is "fundamental" in that the certification or denial of a proposed class should be based on the standards in Rule 23, and not a label attached in a district court's discretion under "unsettled" standards. Finally, this is a "death knell situation" because this case was filed in May 2016 and, if an interlocutory appeal of the denial of class certification is not permitted now, it will mean that an appeal of the denial of class certification can only occur after obtaining individual final judgments with respect to the named plaintiffs, and that such an appeal will still

8

not produce a final classwide judgment, but only a remand for further class proceedings, including discovery.

As indicated, the District Court's March 22, 2022 decision also offers "advice on the desirability of appeal" by pointing out the "absence of a clear directive from the D.C. Circuit" which "leaves open the question of the [fail-safe] rule's applicability." Mem. Op. at 8. The District Court states that the applicability of the rule against such classes is "not entirely settled" in this District, and that while "at least one district court in this jurisdiction" has refused to certify on the basis that the proposed class is "fail-safe," two district judges in this District have certified classes where it was not "definitively" established that the proposed definitions were "fail-safe" definitions. Mem. Op. at 7-8, 10.

**2.    The Proposed Class Definition in This Case Is *Not* a Fail-Safe Definition**

It has become commonplace for defendants to invoke "fail-safe" problems with proposed class definitions to defend against class certification. *See, e.g.*, Jordan S. Elias, "The Ascertainability Landscape and the Modern Affidavit," 84 *Tenn. L. Rev.* 1, 5 (2017). In this case, Plaintiffs revised the introductory language that the District Court identified as raising a "fail-safe" issue by changing "[h]ave vested rights to retirement benefits ..." to "[h]ave been denied vested rights to retirement benefits ...." Doc. 83-1 at 42; Doc. 85 at 4-5. This was all that was

9

needed: as revised, the proposed class definition does not present a "fail-safe" problem because it does not depend on the merits and the members of the class will be bound by the District Court's resolution of the merits – whether or not favorable.

The opening paragraph in the March 22, 2022 decision nonetheless concludes with no explanation or qualification that "Plaintiffs' proposed class definition remains improperly 'fail-safe'" and characterizes this as a "threshold defect" and a "fatal flaw" that makes class certification "impermissible." The "Discussion" section of the decision likewise concludes that the "proposed class remains impermissibly 'fail safe,'" *id.* at 6, and that the "fail-safe problem" "remains the same" with the revised class definition. *Id.* at 7; *see also id.* at 10 n.5 ("conclud[ing] that the broader class definition is an impermissible 'fail-safe'").

Apart from the conclusions, the March 22, 2022 decision offers no explanation of how the class definition as revised remains "fail-safe." The decision never mentions the "fail-safe" issue concerning the second subclass that Plaintiffs' renewed motion addressed by eliminating the reference to ERISA §3(5). The closest the decision comes to explaining how the "fail-safe problem" "remains the same" is the statement that "[i]n order to determine who qualifies as a member of the class, the Court must first make legal determinations on the propriety of the

10

alleged actions as to each of the three subclasses." Mem. Op. at 7. With respect, that assertion is "manifestly erroneous." To illustrate, the District Court previously denied Defendants' motion to dismiss the first proposed subclass claim about not crediting fractional years of vesting service because it had "some doubt as to whether it was proper for the Plan not to convert Plaintiff White's fractional year to an hourly basis for the purposes of the Plan's vesting determination" with [t]hat doubt ... coupled with the allegation of inconsistent treatment by Defendants of employees with fractional years." Doc. 21 at 3. Under the revised class definition, the District Court is still *not* required to "make legal determinations on the propriety of" whether counting vesting service "with no resolution of whether fractions constitutes a 'year of service.'" The District Court simply needs to issue an order defining the first subclass based on whether Hilton has denied vested rights by counting years of vesting service without crediting of "fractional" years. That class definition provides an objective definition of the class that satisfies Rule 23(c)(1)(B) ("An order that certifies a class action must define the class and the class claims, issues, or defenses ...."). If the District Court ultimately were to rule in favor of the Hilton Defendants, despite the "doubts" about Defendants' position that the District Court expressed, Valerie White and the other members of the proposed subclass will be bound by that decision. The same applies to the second

11

and third subclasses on counting "non-participating service" with Hilton properties and paying retroactive/back retirement payments to heirs and estates that are led by Eva Juneau and Peter Betancourt. As stated, Plaintiffs' counsel have identified practically every class member already, and Hilton's counsel have stated that they can identify who is in each subclass without assistance.

Instead of explaining how the "fail-safe problem" "remains the same," the March 22, 2022 decision repeats, nearly verbatim, what the District Court called a "broader discussion of the state of the law on fail-safe class definitions" from its October 2020 decision, without applying that discussion to this case. *See* Mem. Op. at 7, and *compare* Mem. Op. at 6-10 *with* Doc. 81 at 5-10. In that "broader discussion," the District Court asserts that decisions in the First, Sixth, Seventh, and Eighth Circuits establish a "categorical rule against fail-safe classes," that decisions in the Third, Fourth, Ninth, and Eleventh Circuits show "approval" of "such a rule," and that only the Fifth Circuit "stands as an outlier" "reject[ing] the applicability of the rule." Mem. Op. at 8 and ns. 2 and 3.

What the District Court is missing are fundamental points: First, no circuit has adopted a "categorical rule" barring class certification on this basis. In fact, the Sixth and Seventh Circuits determined in *Young* and *Mullins* that "[t]his is not a proscribed fail-safe class," 693 F.3d at 538, and that the proposed definition did

12

"not create a fail-safe class." 795 F.3d at 661.

Second, rather than applying a "categorical rule" against certifying fail-safe classes, the issues the case law repeatedly addresses concern: (1) the threshold question of whether a proposed class definition is for a "fail-safe" class, and (2), if it is, how that should be "solved." In addressing the first question, no disagreement exists among the circuits about what a "fail-safe class" is, including in the Fifth Circuit. It is a class definition under which class membership is defined by the "ultimate question of liability" in a manner that makes it "virtually impossible for the Defendants to ever 'win' the case, with the intended class preclusive effects." *In re Nexium Antitrust Litig.*, 777 F.3d 9, 22 n.19 (1st Cir. 2015).[4] The threshold issue is whether a proposed class definition is properly

---

[4] *Accord, Byrd v. Aaron's Inc.*, 784 F.3d 154, 167 (3d Cir. 2015) (membership in a "fail-safe" "depends on whether the person has a valid claim" and is "unascertainable prior to a finding of liability in the plaintiffs' favor"); *In re Rodriguez*, 695 F.3d 360, 369-70 (5th Cir. 2012) (fail-safe class "is defined in terms of the ultimate question of liability"); *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 538 (6th Cir. 2012) ( "fail-safe" class is "a class that cannot be defined until the case is resolved on its merits"); *Messner*, 669 F.3d at 825 ("fail-safe" is where "a class member either wins or, by virtue of losing, is defined out of a class and is therefore not bound"); *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 660 (7th Cir. 2015), *cert. denied*, 577 U.S. 1138 (2016) ("key to avoiding this [fail-safe] problem is to define the class so that membership does not depend on the liability of the defendant"); *Orduno v. Pietrzak*, 932 F.3d 710, 716-17 (8th Cir. 2019) (this "sort of class ... would allow putative class members to seek a remedy but not be bound by an adverse judgment"); *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1138 n.7 (9th Cir. 2016) ("defining the class to include only those

categorized as fail-safe under that definition. As described below, defense

arguments that proposed class definitions are "fail-safe" often fall short of

satisfying these criteria, and no further analysis is then necessary.

With respect to the second issue of the solution when a fail-safe definition

is properly identified, *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802,

825 (7th Cir. 2012), the case on which the District Court chiefly relied, found an

issue with a proposed class definition, but the Seventh Circuit rejected "flatly

denying class certification on that basis" and remanded for further proceedings

consistent with its opinion. 669 F.3d at 825-26; *accord*, *EQT Prod. Co. v. Adair*,

764 F.3d 347, 360 (4th Cir. 2014) (remanding for district court to consider

whether the proposed classes could be defined without creating a fail-safe class).

Defining a class by reference to injury is often not a basis for "flatly" denying

certification because there is a recognized tension between defining a class in a

manner that avoids standing issues by limiting the class to injured persons and a

categorical rule *against* a definition that refers to the determination of legal

---

individuals who were 'injured' ... threatens to create a 'fail safe' class, one that is defined so narrowly as to "preclude[] membership unless the liability of the defendant is established"); *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1277 (11th Cir. 2019) ("fail-safe" classes are ones "whose membership can only be determined after the entire case has been litigated and the court can determine who actually suffered an injury").

injury. *See, e.g., Cordoba*, *supra*, 942 F.3d at 1276-77; Note, "Class Ascertainability," 124 *Yale L.J.* 2354, 2367 (2015). For this reason, *Messner* determined that "[d]efining a class so as to avoid, on one hand, being over-inclusive and, on the other hand, the fail-safe problem is more of an art than a science" and that class certification "can and often should be solved by refining the class definition." 669 F.3d at 825. District courts, indeed, retain discretion to redefine a class in a manner that addresses those concerns. *See* FRCP 23(c)(1) (requiring "order that certifies a class action" to "define the class" and providing that the order "may be altered or amended before final judgment"); *Moore's Federal Practice and Procedure* § 23:21 (3d ed. 2016) ("court may, in its discretion, grant certification but modify the definition of the proposed class to provide the necessary precision to correct other deficiencies"); Conte & Newberg, *Newberg on Class Actions*, §8:12 (4th ed. 2002) ("When a class definition is not acceptable, judicial discretion can be utilized to save the lawsuit from dismissal").[5]

In this case, the threshold issue the District Court never addressed is that

---

[5] In the related *Kifafi* class action, the District Court did *not* adopt Plaintiff's counsel's proposed definitions, but exercised its discretion to craft "reasonable" ones. *Kifafi v. Hilton Hotels Ret. Plan*, 701 F.3d 718, 732 (D.C. Cir. 2012) ("Even if it would have been reasonable to certify a broader nonparticipating service class, the district court's actual certification decision was no less reasonable").

the class definition that Plaintiffs revised and proposed is *not* a "fail-safe" class

definition because it does not define class membership based on the ultimate issue

and because it will bind the class members if their position on the merits is

denied. The only example of an impermissible "fail-safe" class that the District

Court uses in its discussion is one where, in contrast, the class is defined as "All

Black CBA employees who have been discriminated against because of their race

or color in regard to competitive promotion selection." Mem. Op. at 6. This

example is pulled from *Campbell v. AMTRAK*, 311 F.Supp.3d 281, 314 (D.D.C.

2018). But, with respect, the Plaintiffs' proposed definition in this case is *not* like

the one in *Campbell* because the Plaintiffs' revised class definition sets out

objective criteria to define the class that will bind the members of the class –

whether or not the case is successful on the merits. The class definition in

*Campbell*, in contrast, ended with fail-safe language and offered no objective

criteria from which the members of the class can be ascertained. *Compare* Mem.

Op. at 3-4 *with* 311 F.Supp.3d at 312-315.

In addition to *not* being like *Campbell*, this case is like *Ramirez v. United

States Immigration & Customs Enf't*, 338 F.Supp.3d 1, 49 (D.D.C. 2018), and

*Afghan & Iraqi Allies v. Pompeo*, 334 F.R.D. 449, 464 (D.D.C. 2020). Both of

those decisions determined that proposed class definitions were *not*

16

impermissibly "fail-safe." *Afghan & Iraqi Allies* rejected the Defendant's argument that class members "stand to benefit from success, but will not be bound by a loss," stating, "That is not the case here." 334 F.R.D. at 464. Similarly, *Ramirez* ruled that "the class proposed is none the less ascertainable and meets any such requirement for certification." 338 F.Supp.3d at 49. *Accord, Hoyte v. District of Columbia*, 325 F.R.D. 485, 489 n.3 (D.D.C. 2017) (holding that "ascertainability" requirement was satisfied, but noting that the requirement is not in the text of Rule 23).[6]

The District Court's decision tries to buttress its reliance on *Campbell,* rather than *Ramirez* and *Afghan & Iraqi Allies,* by citing three decisions from other circuits and asserting that "numerous district courts throughout the country have applied the rule against fail-safe classes in denying class certification." Mem. Op. at 9 n.4. But the decisions the District Court cites are ones that "fit[] squarely within the definition of a 'fail-safe class," *Bais Yaakov of Spring Valley v. ACT, Inc.*, 328 F.R.D. 6, 14 (D. Mass. 10/24/2018), and where the plaintiffs

---

[6] Although the District Court cites *Ramirez* and *Afghan & Iraqi Allies*, its description of them is incomplete. The District Court said these decisions "considered the rule against fail-safe classes, without concluding that [the rule] is definitively established as a criteria for class certification." Mem. Op. at 7-8. That much may be accurate, but both decisions concluded that the proposed class definitions were *not* impermissibly "fail-safe."

17

had "not proposed an alternative, workable definition." *Day v. Humana Ins. Co.*, 335 F.R.D. 181, 200 (N.D. Ill. 6/1/2020), and the problem could not be "remedied by refining the class definition." *Bais Yaakov*, 328 F.R.D. at 14. *Accord, Quevedo v. Macy's, Inc.*, 2011 WL 13124445, *6 (C.D. Cal. 3/9/2011) ("Plaintiff has not offered an alternative class definition, and no alternative definition of an ascertainable class is readily apparent").

The far more numerous group of district court decisions are not like that, but consist of decisions like *Ramirez* and *Afghan & Iraqi Allies* rejecting defense efforts to defeat class certification by inaccurately or dubiously labeling a proposed class definition as having a "fail-safe" problem. *See, e.g., Sagar v. Kelly Automotive Group, Inc.*, 2021 WL 5567408, *7, 2021 U.S. Dist. LEXIS 227781, *20 (D. Mass. 11/29/2021) (despite defendant's argument that proposed class "is an impermissible 'fail-safe class,'" "[t]his class, defined by the objective fact of placing a number on the Do Not Call Registry, is not impermissibly based on a legal conclusion"); *McCullough v. City of Montgomery*, 2021 WL 2044900, *12, 2021 U.S. Dist. LEXIS 96861, *34-35 (M.D. Ala. 5/21/2021) ("so-called 'fail-safe class' is one that 'require[s] a court to decide the merits of prospective individual class members' claims to determine class membership.' Yet that's not what the proposed class definition does"; the class definition, "does not turn on

18

the merits"); *In re Toll Rds. Litig. Penny Davidi Borsuk*, 2020 WL 9597845, *5, 2020 U.S. Dist. LEXIS 254278, *18 (C.D. Cal. 12/30/2020) (the "Class Certification Order redefined the proposed class to avoid a 'fail-safe class' by focusing on the [Personally Identifiable Information] transfers themselves, not whether those transfers violated privacy rights"); *Brown v. DirecTV, LLC*, 330 F.R.D. 260, 268 (C.D. Cal. 3/29/2019) ("Plaintiff's Claim is not fail-safe" but "is defined using objective criteria"); *Mattson v. New Penn Fin., LLC*, 2018 WL 6735088, *4, 2018 U.S. Dist. LEXIS 218627, *10 (D. Or. 11/6/2018) ("a class definition is not fail-safe where 'membership in th[e] class can be readily determined by objective criteria'...; [a]t this early phase in the litigation, prior to discovery, it is unclear whether a determination of consent involves a legal analysis regarding each individual or can be objectively determined from the evidence"); *In re TD Bank, N.A. Debit Card Overdraft Fee Litig.*, 2018 U.S. Dist. LEXIS 243064, *4 (D.S.C. 6/20/2018) ("revised class definition does not suffer from this pitfall, and thereby avoids the impermissibility of a fail-safe class with which the Court was initially concerned"); *Doe v. Trinity Logistics, Inc.*, 2018 WL 1610514, *12, 2018 U.S. Dist. LEXIS 56254, *32 (D. Del. 4/3/2018) (despite defendants' contentions that it was "fail-safe," "plaintiff's Class definition uses language that is legally objective and non-conclusory in defining potential class

19

members"); *Johansen v. One Planet Ops, Inc.,* 2018 WL 1558263, *3, 2018 U.S. Dist. LEXIS 47776, *7 (S.D. Ohio 3/5/2018) (rejecting argument that class definition was "fail-safe," when the proposed class "may include those who are entitled to relief, and it may include those who are not entitled to relief"); *Snyder v. Ocwen Loan Servicing, LLC*, 258 F.Supp.3d 893, 903 (N.D. Ill. 2017) ("plaintiffs' class definition does not so clearly present a fail-safe class as to justify denying certification or rewriting the limited class definition"); *Grubb v. Green Tree Servicing, LLC*, 2017 WL 3191521, *15, 2017 U.S. Dist. LEXIS 117465, *44 (D.N.J. 7/26/2017) ( Plaintiff's proposed class "does not constitute an impermissible 'fail-safe' class, because the definition uses language that is legally objective and non-conclusory in defining the potential members"); *Melgar v. CSK Auto, Inc.*, 2015 WL 9303977, *8, 2015 U.S. Dist. LEXIS 170833, *21 (N.D. Cal. 12/22/2015) ("Fail-safe classes are defined by the merits of their legal claims, and are therefore unascertainable prior to a finding of liability in the plaintiffs' favor"; "[t]hat is not the case here"); *Weidenhamer v. Expedia, Inc.*, 2015 WL 7157282, *17, 2015 U.S. Dist. LEXIS 154750, *46 (W.D. Wash. 11/13/2015) ("[c]ertainly, the class is not defined in the best possible manner, but its definition does not necessarily presuppose liability"; "[a]s such, the Court finds that the MOBILEGO class is not failsafe"); *Panacci v. A 1 Solar Power,*

20

*Inc.*, 2015 WL 3750112, *8, 2015 U.S. Dist. LEXIS 77294, *23 (N.D. Cal. 6/15/2015) ("Plaintiff's class definitions are not fail-safe. Membership in both of Plaintiff's proposed classes can be determined without reaching any legal conclusions"); *Donaca v. Metro. Life Ins. Co.*, 2014 WL 12597152, *2, 2014 U.S. Dist. LEXIS 198899, *6 (C.D. Cal. 1/22/ 2014) ("Donaca's class definition, while overbroad, does not require the court to determine the merits of individual class members' claims in order to determine if they are members of the class"); *Kenneth R. v. Tri-County CAP, Inc. v. Hassan*, 293 F.R.D. 254, 264 (D.N.H. 9/17/2013) ("proposed class here is appropriately defined"; the proffered revision made class definition "sufficiently definite" by providing "some objective and relevant limiting criteria"); *Perez v. State Farm Mut. Auto. Ins. Co.*, 2011 U.S. Dist. LEXIS 164821, *10 (N.D. Cal. 7/5/2011) ("the determination of whether a part would 'significantly lessen the quality of [an] automobile's repair' is a factual determination, not a legal one. Accordingly, the Court finds that Plaintiffs do not propose a 'fail safe' class").

It is "manifestly erroneous" and a "fundamental" error for the District Court to deny class certification without going through any threshold analysis like this to determine whether Plaintiffs' revised definition is for a "fail-safe" class.

**Conclusion**

For the foregoing reasons, Plaintiffs' Petition for Leave to Appeal Pursuant to FRCP 23(f) should be granted. Despite Defendants and the District Court's assertions, no circuit court has adopted a "categorical rule" under which class certification is barred by labeling the proposed class definition as "fail-safe" with no threshold analysis to show that the label "fits squarely" and when "objective" criteria are available and have been proposed to solve any issue.

Dated: April 5, 2022

Respectfully submitted,

/s/ Stephen R. Bruce
Stephen R. Bruce
1667 K St., NW, Suite 410
Washington, DC 20006
202-289-1117
stephen.bruce@prodigy.net

Attorney for Plaintiffs-Petitioners

**Attachments**

March 22, 2022 Memorandum Opinion

March 22, 2022 Order

22

**<u>Certificate of Compliance and Service</u>**

I hereby certify that this Petition by Plaintiffs-Petitioners for Leave to Appeal Pursuant to FRCP 23(f) complies with FRAP 5(c)(1) and Circuit Rule 5 because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), the Petition contains 5,076 words and was prepared in a proportionally-spaced typeface using WordPerfect X4 with a Times New Roman 14 point font.

I also hereby certify that, in addition to filing this Petition through the CM-ECF system on April 5, 2022, the original and three paper copies of the Petition will be filed with the Clerk of Court within one business day of the electronic filing, and that the Petition was served on April 5, 2022, through the CM-ECF system, or via email where CM-ECF is not available, on the following counsel for Defendants-Respondents:

Jonathan K. Youngwood
Simpson Thacher & Bartlett LLP
425 Lexington Ave.
New York, NY 10017

Andrew Lacy
Simpson Thacher & Bartlett LLP
900 G St., NW
Washington, DC 20001

Dated April 5, 2022

/s/ Stephen R. Bruce
Stephen R. Bruce
Attorney for Plaintiffs-Petitioners

## Certificate of Parties and Amici and Corporate Disclosure Statement

Pursuant to Circuit Rules 5(a) and 28(a)(1)(A), Plaintiffs-Petitioners, by and through counsel, submit this Certificate of Parties and Amici Curiae. The following persons are parties before the District Court and are parties before this Court in connection with this Petition:

1.    Plaintiffs: Valerie R. White, Eva Juneau, and Peter Betancourt;

2.    Defendants: Hilton Hotels Retirement Plan, Hilton Worldwide, Inc., the Global Benefits Administrative Committee for the Hilton Hotels Retirement Plan, and Mary Nell Billings, S. Ted Nelson, Casey Young, and Unnamed Members of the Global Benefits Administrative Committee.

No entities appeared as amici curiae before the District Court and no entities of which Plaintiffs are aware intend to participate as amici curiae before this Court in connection with this Petition.

Pursuant to Circuit Rules 5(a) and 26.1, Plaintiffs-Petitioners, by and through counsel, also file this Corporate Disclosure Statement certifying that Plaintiffs-Petitioners are individuals, and not corporations, do not have any parent corporations, and do not issue stock.

Dated: April 5, 2022

/s/ Stephen R. Bruce
Stephen R. Bruce
Attorney for Plaintiffs-Petitioners

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

VALERIE R. WHITE, *et al.*,

     Plaintiffs,

     v.

HILTON HOTELS RETIREMENT
PLAN, *et al.*,

     Defendants.

Civil Action No. 16-856 (CKK)

**MEMORANDUM OPINION**
(March 22, 2022)

This putative class action comes before the Court on Plaintiff's [83] Second Renewed Motion for Class Certification. The Court has now offered Plaintiffs three opportunities to craft an appropriate class definition, yet Plaintiffs' proposed class definition remains improperly "fail-safe." This threshold defect renders certification of the proposed class impermissible. This fatal flaw bars Plaintiffs from converting this case into a class action. Accordingly, upon consideration of the briefing,[1] the relevant legal authorities, and the record as a whole, the Court shall **DENY** Plaintiffs' [83] Second Renewed Motion for Class Certification.

## I.   BACKGROUND

The Court shall briefly summarize the factual background already addressed in the Court's prior two orders denying without prejudice Plaintiffs' motions for class certification. Plaintiffs Valerie

---

[1] The Court's consideration has focused on the following documents:
- Second Am. Class Action Compl. ("Second Am. Compl."), ECF No. 50;
- Plaintiffs' Memorandum of Law in Support of Second Renewed Motion for Class Certification ("Mot."), ECF No. 83-1;
- Defendants' Memorandum of Points and Authorities in Opposition to Plaintiffs' Second Renewed Motion for Class Certification ("Opp."), ECF No. 84; and
- Plaintiffs' Reply in Support of Second Renewed Motion for Class Certification., ("Repl."), ECF No. 85.

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

R. White, Eva Juneau, and Peter Betancourt ("Plaintiffs") bring this putative class action under the Employee Retirement Income Security Act of 1974 ("ERISA") with respect to certain vesting determinations made by the Hilton Hotels Retirement Plan (the "Plan"). This matter was noticed as related to *Kifafi v. Hilton Hotels Retirement Plan*, No. 98–cv–1517 (CKK) (D.D.C.) ("*Kifafi*"), an action over which the Court concluded its jurisdiction in December 2015, after more than 17 years of litigation. *See Kifafi*, 752 F. App'x 8, 9 (D.C. Cir. Feb. 15, 2019) (Mem.) (per curiam). In this action, Plaintiffs, who are former Hilton employees and putative beneficiaries of the Plan, seek to address grievances that did not fall within the narrow classes certified in the *Kifafi* litigation. Now, after the Court denied their first two motions for certification without prejudice, ECF Nos. 62, 80, Plaintiffs have filed their third motion for class certification, which is presently pending before the Court. Plaintiffs ground this motion in the allegations within their Second Amended Complaint. Mot. at 2.

Specifically, Plaintiffs seek to represent three separate subclasses of claimants. First, Plaintiff Valerie R. White alleges that Hilton unlawfully applied a so-called "elapsed time method" to employee service rendered before 1976, resulting in an improper calculation of her years of vesting credit under the Plan. *See* Second Am. Compl. ¶¶ 41–44. Plaintiff Eva Juneau alleges that Hilton improperly denied vesting credit to employees, like her, for service rendered at certain "non-participating" locations. *See* Second Am. Compl. ¶¶ 57–58. Additionally, Plaintiffs allege that Hilton failed to keep proper documentation for services rendered by certain employees, like Ms. Juneau, and that Hilton should have, but failed to, credit appropriate time "equivalencies" to these employees, in the absence of that proper documentation. *See* Second Am. Compl. ¶¶ 68–73. Finally, Plaintiff Peter Betancourt alleges that Hilton also improperly denied claims made by surviving beneficiaries "solely on the grounds that the claimant is 'not the surviving spouse'" of the original Plan participant. *Id.* ¶ 75. According to Plaintiffs, this is not a valid "basis for a denial of a claim to retroactive benefits." *Id.*

2

In their second motion for class certification, Plaintiff sought to certify a class that comprises three distinct subclasses corresponding to the Plaintiffs' distinctive claims outlined above.  In full, Plaintiffs sought to certify a class of "any and all persons who:

(a) Are former or current employees of Hilton Worldwide, Inc. or Hilton Hotels Corp., or the surviving spouses or beneficiaries of former Hilton employees;

(b) Submitted a claim for vested retirement benefits from Hilton under the claim procedures ordered by the District Court and the Court of Appeals in *Kifafi, et al., v. Hilton Hotels Retirement Plan, et al.*, C.A. 98-1517; and

(c) Have vested rights to retirement benefits that have been denied by the Hilton Defendants':

(1) Use of "fractional" years of vesting service under an "elapsed time" method to count periods of employment before 1976 with no resolution of whether the fractions constitute a "year of service" under ERISA;

(2) Refusal to count "non-participating" service for vesting purposes notwithstanding that the service was with the "employer" under ERISA §3(5), that the Hilton Defendants counted service at the same "Hilton Properties" in *Kifafi* and represented to this Court and the D.C. Circuit in *Kifafi* that Hilton had counted "non-participating" service with Hilton for vesting, and that the "records requested and received from Defendants do not identify any non-participating property that is also not a Related Company"; and

(3) Denial of retroactive/back retirement benefit payments to heirs and estates on the sole basis that the claimants are "not the surviving spouse" of deceased vested participants."

Pls.' Proposed Order on Class Cert., ECF No. 74-1.  Plaintiffs allege that this class comprises at least 220 distinct individuals throughout the United States.  *See* Second Am. Compl. ¶ 12.  On October 7, 2020, the Court rejected this definition, holding, among other things, that the term "have vested rights to retirement benefits that have been denied" is concomitant with the merits of the case.

Plaintiffs' third proposed class definition is now:

A class consisting of any and all persons who:

(a) Are former or current employees of Hilton Worldwide, Inc. or Hilton Hotels Corp., or the surviving spouses or beneficiaries of former Hilton employees,

(b) Submitted a claim for vested retirement benefits from Hilton under the claims procedures ordered by the District Court and the Court of Appeals in *Kifafi, et al. v. Hilton Hotels Retirement Plan, et al.*, C.A. 98-1517; and

(c) Have **been denied** vested rights to retirement benefits ~~that have been denied~~ by the Hilton Defendants:'

> (1) Use of 'fractional' years of vesting service under an 'elapsed time' method to count periods of employment before 1976 with no resolution of whether fractions constitute a 'year of service' under ERISA;
>
> (2) Refusal to count 'non-participating' service for vesting purposes notwithstanding that the service was with ~~the 'employer' under ERISA §3(5)~~ <u>a hotel property that Hilton operated under a management agreement</u>, that the Hilton Defendants counted service at the same "Hilton Properties" in *Kifafi* and represented to this Court and the D.C. Circuit in *Kifafi* that Hilton had counted "non-participating service with Hilton for vesting, and that 'records requested and received from Defendants who not identify any non-participating property that is also not a Related Company; and
>
> (3) Denial of retroactive/back retirement benefit payments to heirs and estates on the ~~sole~~ basis that the claimants are 'not the surviving spouse' of deceased vested participants.

*Compare White v. Hilton Hotels Ret. Plan*, 2020 WL 5946066 at *2 (D.D.C. Oct. 7, 2020) *with* ECF 83-2.  Defendants oppose Plaintiffs' revised definition.

## II.    LEGAL STANDARD

In deciding whether to certify a class, a court must consider whether the proposed class meets the requirements of Federal Rule of Civil Procedure 23.  *Kottaras v. Whole Foods Mkt., Inc.*, 281 F.R.D. 16, 20 (D.D.C. 2012).  The party seeking class certification must "affirmatively demonstrate" that the requirements of Rule 23 have, in fact, been satisfied.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  "Certification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied," and that "actual, not

presumed, conformance with Rule 23(a) remains indispensable." *Id.* at. 350–51 (cleaned up).  At the certification stage, "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013).

The Rule 23 analysis proceeds in two parts.  First, the putative "class plaintiff has the burden of showing that the requirements of Rule 23(a)" are met.  *Richards v. Delta Air Lines, Inc.*, 453 F.3d 525, 529 (D.C. Cir. 2006).  Under Rule 23(a), a member of a class may sue on behalf of the class if "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).   Next, the putative class plaintiff must also demonstrate "that the class is maintainable pursuant to one of Rule 23(b)'s subdivisions." *Richards*, 453 F.3d at 529.  Here, Plaintiffs request certification under Rule 23(b)(2) or, alternatively, Rule 23(b)(3).  *See* Pls.' Mot. at 31–33.  Certification under Rule 23(b)(2) is proper where "final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  Certification under Rule 23(b)(3) is appropriate where common questions within the proposed class predominate over non-common questions, and where class resolution is superior to other methods of adjudication.  Fed. R. Civ. P. 23(b)(3); *see also Cohen v. Warner Chilcott Public Ltd. Co.*, 522 F. Supp. 2d 105, 116–17 (D.D.C. 2007).

Finally, in addition to the strictures of Rule 23, courts also consider the "implied requirement" of "definiteness" before certifying a class.  *Thorpe v. District of Columbia*, 303 F.R.D. 120, 139 (D.D.C. 2014).  Traditionally, the "definiteness" requirement is not excessively

stringent.  *Id.*  Nonetheless, it does demand that plaintiffs are "able to establish that the general outlines of the membership of the class are determinable at the outset of the litigation."  *Id.* (quotation omitted).  "Accordingly, a class may be certified only when 'an individual would be able to determine, simply by reading the [class] definition, whether he or she [is] a member of the proposed class.'"  *Campbell v. Nat'l R.R. Passenger Corp.*, 311 F. Supp. 3d 281, 313 (D.D.C. 2018) (quoting *Artis v. Yellen*, 307 F.R.D. 13, 23 (D.D.C. 2014)).

### III.    DISCUSSION

For the reasons set forth herein, the Court concludes that Plaintiffs' proposed class remains impermissibly "fail-safe," as presently defined.  This precludes certification.

As the Court explained when confronting Plaintiffs' last proposed class definition, a fail-safe class exists where the class definition "depend[s] on the merits of the underlying claim."  *Id.*  Put otherwise, a fail-safe class arises where the class "is defined so that whether a person qualifies as a member depends on whether the person has a valid claim."  *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012).  For example, the class definition: "*All Black CBA employees who have been discriminated against because of their race or color in regard to competitive promotion selections*," is impermissibly "fail-safe" because it "makes membership in the class contingent on individualized merits determinations as to whether the individual suffered discrimination because of his race."  *Campbell*, 311 F. Supp. 3d at 314.  "Such a class definition is improper because a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment."  *Messner*, 669 F.3d at 825.  "Moreover, by using a future decision on the merits to specify the scope of the class, a fail-safe class definition makes it impossible to determine who [is] in the class until the case ends."  *Campbell*, 311 F. Supp. 3d at 314 (cleaned up).

6

In its last Memorandum Opinion on the subject, the Court agreed that the term "*have vested rights to retirement benefits that have been denied*[,]" ECF No. 74-1, at ¶ 2(c), was a "fail-safe" provision. *White*, 5946066 at *5. On its face, this class requirement may have appeared objective, but, in fact, the question of whose rights have vested is central to the merits of this action. Consider Ms. Valerie White, for example, who possesses "a total of 9.52957 years of vesting service," leaving her a fraction short of the ten years of credit needed for her rights to vest. Second Am. Compl. ¶ 44. Therefore, Ms. White will "have vested rights" and become a member of the proposed class, only if the Court agrees with her merits assertion that fractional years of service must be "rounded up." *See* Second. Am. Compl. ¶ 44. But of course, this is the very question at the heart of Plaintiffs' claim in Count I of the Second Amended Complaint. *See id.* ¶¶ 40–51.

Plaintiffs have proposed to remedy this issue by changing "have vested rights to benefits that have been denied" to "[h]ave been denied vested rights to retirement benefits." The problem remains the same. In order to determine who qualifies as a member of the class, the Court must first make legal determinations on the propriety of the alleged actions as to each of the three sub-classes. As explained, "[s]uch a class definition is improper because a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment." *Messner*, 669 F.3d at 825. Nevertheless, as the Court shall definitively settle class certification in this Memorandum Opinion and the accompanying Order, it shall restate its broader discussion of the state of the law on "fail-safe" class definitions.

As the Court has previously explained, the rule against such classes is not entirely settled. In this jurisdiction, at least one district court has adopted the rule and denied certification thereunder, *see Campbell*, 311 F. Supp. 3d at 313–15, while two other district courts have considered the rule against fail-safe classes, without concluding that it is definitively established

as a criteria for class certification, *see Ramirez v. United States Immigration & Customs Enf't*, 338

F. Supp. 3d 1, 49 (D.D.C. 2018); *Afghan & Iraqi Allies Under Serious Threat Because of Their*

*Faithful Serv. to the United States v. Pompeo*, 334 F.R.D. 449, 464 (D.D.C. 2020).  The D.C. Circuit

has not opined directly on this matter.  Yet, the absence of a clear directive from the D.C. Circuit

does not negate the rule against fail-safe classes, but rather leaves open the question of the rule's

applicability.

And here, the Court finds multiple factors weighing strongly in favor of an operative rule

against fail-safe classes.  First, of the nine circuits to consider the matter, eight circuits have either

adopted a categorical rule against fail-safe classes[2] or discussed such a rule with approval.[3]  Only

the Fifth Circuit has rejected the applicability of the rule against fail-safe classes.  *See In re*

*Rodriguez*, 695 F.3d 360, 370 (5th Cir. 2012).  This Fifth Circuit precedent, however, stands as an

outlier amongst the circuits and is post-dated by more recent circuit precedent adopting the rule

against fail-safe classes.  Moreover, numerous district courts throughout the country have applied

---

[2] *See, e.g.*, *Orduno v. Pietrzak*, 932 F.3d 710, 716 (8th Cir. 2019) ("That sort of class is prohibited because it would allow putative class members to seek a remedy but not be bound by an adverse judgment . . . "); *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 660 (7th Cir. 2015) ("[C]lasses that are defined in terms of success on the merits—so-called 'fail-safe classes'—also are not properly defined."); *In re Nexium Antitrust Litig.*, 777 F.3d 9, 22 (1st Cir. 2015) ("[E]xcluding all uninjured class members at the certification stage is almost impossible in many cases, given the inappropriateness of certifying what is known as a 'fail-safe class'—a class defined in terms of the legal injury."); *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 538 (6th Cir. 2012) ("[A] class definition is impermissible where it is a 'fail-safe' class, that is, a class that cannot be defined until the case is resolved on its merits.").

[3] *See, e.g.*, *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1276–77 (11th Cir. 2019) ("We do not hold today that a court is required to ensure that the class definition does not include any individuals who do not have standing before certifying a class. Such a rule would run the risk of promoting so-called 'fail-safe' classes, whose membership can only be determined after the entire case has been litigated and the court can determine who actually suffered an injury."); *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1138 n.7 (9th Cir. 2016) ("[D]efining the class to include only those individuals who were 'injured' by non-disclosure threatens to create a 'fail safe' class."); *Byrd v. Aaron's Inc.*, 784 F.3d 154, 167 (3d Cir. 2015) ("[R]equiring such specificity may be unworkable in some cases and approaches requiring a fail-safe class."); *EQT Prod. Co. v. Adair*, 764 F.3d 347, 360 n.9 (4th Cir. 2014) ("Although the issue was briefed and argued below, the district court did not address whether it is possible to define the classes without creating a fail-safe class . . . . On remand, the district court should consider this issue as part of its class-definition analysis.").

the rule against fail-safe classes in denying class certification.[4]  And even where debate exists regarding the contours of a broader "ascertainability" requirement for class certification, the narrow rule against fail-safe classes has persisted.  *See Mullins*, 795 F.3d at 660 (rejecting an expanded "ascertainability" requirement while applying the rule against "fail-safe" classes as "well-settled").

Furthermore, beyond the weight of this precedent, the gravamen of the rule itself is rooted in compelling principles of fairness and common-sense.  As a practical matter, putative members of a fail-safe class are not identifiable after class certification, because the definition of a class member turns on the final result of the litigation itself.  This creates tangible administrative problems for the courts, including difficulty in providing proper notice to class members.  *See Orduno*, 932 F.3d at 716–17.  Fail-safe classes are also inherently unfair to the defendant, who "is forced to defend against the class, but if a plaintiff loses, she drops out and can subject the defendant to another round of litigation."  *Mullins*, 795 F.3d at 660.  In this way, fail-safe classes also contravene the notions of efficiency critical to Rule 23 and the class action mechanism.  A merits ruling against a fail-safe class does not resolve a class-wide dispute, but instead hollows out the fail-safe class at issue, leaving further litigation for a later date.

---

[4] *See, e.g.*, *Day v. Humana Ins. Co.*, 335 F.R.D. 181, 200 (N.D. Ill. 2020) (denying certification of an ERISA class where "the class Plaintiff [ ] attempted to define [wa]s 'fail-safe'—that is, defined so that whether a person qualifies as a member depends on whether the person has a valid claim") (quotation omitted); *Bais Yaakov of Spring Valley v. ACT, INC.*, 328 F.R.D. 6, 14 (D. Mass. 2018) (denying class certification where "the class fit[ ] squarely within the definition of a 'fail-safe class' because class membership [wa]s defined by whether or not members have a valid claim"); *Quevedo v. Macy's, Inc.*, No. CV091522GAFMANX, 2011 WL 13124445, at *5 (C.D. Cal. Mar. 9, 2011) ("For the independent reason that Plaintiff's proposed sub-classes constitute such impermissible 'fail-safe' classes against which no adverse judgment could be entered, the Court denies certification.").

In view of the foregoing, the Court will apply the rule against fail-safe classes in this case. Indeed, it would be improvident to certify a fail-safe class like Plaintiffs' where the D.C. Circuit has not approved of such classes and where numerous circuit courts, and at least one district court in this jurisdiction, have applied a common-sense rule against them.  Having offered Plaintiffs three opportunities to remedy this problem, each to no avail, the Court shall deny class certification.[5]

## IV.  CONCLUSION

For the reasons set forth in this Memorandum Opinion, the Court **DENIES** Plaintiffs' [83] Second Renewed Motion for Class Certification.

An appropriate order accompanies this Memorandum Opinion.

**Date**: March 22, 2022

_____/s/_____
**COLLEEN KOLLAR-KOTELLY**
United States District Judge

---

[5] Although the problems with the second and third proposed subclasses as explained in the Court's [82] Memorandum Opinion remain, *id.* at 10-16, the Court need not reach them here, having concluded that the broader class definition is an impermissible "fail-safe."

10

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| VALERIE R. WHITE, *et al.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>HILTON HOTELS RETIREMENT<br>PLAN, *et al.*,<br><br>    Defendants. |

Civil Action No. 16-856 (CKK)

**ORDER**
(March 22, 2022)

For the reasons set forth in the accompanying Memorandum Opinion, it is hereby

**ORDERED**, that Plaintiffs' [83] Second Renewed Motion for Class Certification is

**DENIED**.  It is further

**ORDERED**, that, on or before April 12, 2022, the parties shall file a joint status report

identifying how they propose to proceed in this matter and a schedule for such proceedings.

**SO ORDERED**.


**Date**: March 22, 2022                                            _____/s/_____
                                                                                   **COLLEEN KOLLAR-KOTELLY**
                                                                                   United States District Judge