NOT YET SCHEDULED FOR ORAL ARGUMENT

## No. 22-8001

# United States Court of Appeals for the District of Columbia Circuit

---

VALERIE WHITE, EVA JUNEAU, and PETER BETANCOURT,
individually and on behalf of all others similarly situated,

*Plaintiffs-Petitioners-Appellants,*

*v.*

HILTON HOTELS RETIREMENT PLAN, HILTON WORLDWIDE, INC.,
GLOBAL BENEFITS ADMIN. COMMITTEE, *et al.*,

*Defendants-Respondents-Appellees.*

*On Petition and Appeal from the United States District Court
for the District of Columbia No. 1:16-cv-00856-CKK*

---

# BRIEF FOR PLAINTIFFS-PETITIONERS-APPELLANTS

STEPHEN R. BRUCE
STEPHEN R. BRUCE LAW OFFICES
1667 K Street, NW, Suite 410
Washington, DC 20006
(202) 289-1117
stephen.bruce@prodigy.net

*Attorney for Plaintiffs-Petitioners-
 Appellants*

---

## CERTIFICATE AS TO PARTIES, RULINGS UNDER REVIEW, AND RELATED CASES

Pursuant to Circuit Rule 28(a)(1), counsel for Plaintiffs-Petitioners-Appellants certify as follows:

### A.    Parties and Amici

Appellants in this case are the Plaintiffs Valerie R. White, Eva Juneau, and Peter Betancourt, individually and on behalf of all others similarly situated in this proposed class action;

Appellees are the Defendants Hilton Hotels Retirement Plan, Hilton Worldwide, Inc., the Global Benefits Administrative Committee for the Hilton Hotels Retirement Plan, and Mary Nell Billings, S. Ted Nelson, Casey Young, and Unnamed Members of the Global Benefits Administrative Committee.

No entities appeared as amici curiae before the District Court and no entities of which Plaintiffs are aware intend to participate as amici before this Court in connection with this Petition and Appeal.

### B.    Rulings Under Review

The rulings under review are the March 22, 2022 Memorandum Opinion and Order (Dkt.#87 and 88 in C.A. 1:16-cv-00856-CKK) denying the Plaintiffs' Amended Motion to Certify Class and the October 7, 2020 Memorandum Opinion and Order (Dkt.#80 and 81) denying the Plaintiffs' earlier Motion to Certify Class

"without prejudice." These rulings are reproduced in the Joint Appendix at JA 240-256 (the October 7, 2020 Opinion) and JA 633-643 (the March 22, 2022 Opinion) and are unofficially reported at 2020 WL 5946066, 2020 U.S. Dist. LEXIS 18579, and  2022 WL 1050570, 2022 U.S. Dist. LEXIS 51151.

### C.    Related Cases

A related case to this one is *Kifafi et al. v. Hilton Hotels Retirement Plan, et al.,*, 1:98-cv-01517-CKK. which is a nationwide class action that has been before this Court on appeal three times in No. 11-7113, 16-7002, and 21-7025. This Court's decisions in *Kifaf*i are reported officially and unofficially at 701 F.3d 718 (12/14/2012), 752 Fed.Appx. 8 (2/15/2019), and 2022 WL 2280296, 2022 U.S. App. LEXIS 17586 (6/24/2022).

## CORPORATE DISCLOSURE STATEMENT

Plaintiffs-Petitioners-Appellants are individuals, and not corporations; they do not have any parent corporations and do not issue stock.

# TABLE OF CONTENTS

Jurisdictional Statement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Pertinent Statutory Provisions.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Issues. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Statement of the Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

A.     The Subclasses of Vesting Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    1.     Valerie White's "Fractional Years of Service" Claim. . . . . . . . . . . . 3

    2.     Eva Juneau's "Non-Participating Service" Claim. . . . . . . . . . . . . . 5

    3.     Peter Betancourt's "Heirs and Estates" Claim. . . . . . . . . . . . . . . . . 7

B.     Procedural History.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

C.     Plaintiffs' Proposed Class Definition. . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Summary of Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Standard of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

I.     Plaintiffs' Petition Fits the Circumstances in Which an Interlocutory Rule
23(f) Appeal "Ordinarily Is Appropriate" Including When the District
Court Advises of an "Unsettled and Fundamental" Issue. . . . . . . . . . . . . 22

II.     The Proposed Class Definition in Plaintiffs' Renewed Motion Is *Not* a
"Fail-Safe" Class Definition . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

    A.     When a Defendant Labels a Proposed Class Definition "Fail-Safe,"
    the Threshold Question Is Whether that Categorization "Fits

Squarely" and If So, If the Definition Can Be Revised to "Avoid"
or "Solve" the Issue.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

B.    The Proposed Definition in This Case Is Like the Class Definitions
in *Ramirez*, *Afghan & Iraqi Allies*, and Scores of Other Cases
Where a "Fail-Safe" Label Does *Not* "Fit Squarely" . . . . . . . . . . . . 35

C.    When a "Fail-Safe" Issue Cannot Be "Avoided" or "Solved" by
Revising the Class Definition, There Usually Is an Issue With
"Commonality," as There Was in *Campbell*. . . . . . . . . . . . . . . . . . 41

III.    Plaintiffs' Renewed Motion Addressed the "Additional Impediments"
Identified in the District Court's October 7, 2020 Decision that a Footnote
to the March 22, 2022 Decision Erroneously Said "Remain.". . . . . . . . . . . 43

A.    The Renewed Motion Addressed the "Problems" the District Court
Identified With the Subclass for "Non-Participating Service".. . . . . 45

B.    The Renewed Motion Also Addressed the "Problem" the District
Court Identified With the Subclass for "Heirs and Estates". . . . . . . 50

Conclusion.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

Certificate of Compliance

Certificate of Filing and Service

# TABLE OF AUTHORITIES

## CASES

*In re A.H. Robins*, 880 F.2d 709 (4th Cir. 1989). ........................ 29

*Abrams v Interco Inc.*, 719 F.2d 23 (2d Cir. 1983). ..................... 19

*Afghan & Iraqi Allies v. Pompeo*, 334 F.R.D. 449 (D.D.C. 2020). ............ 38

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997). ..................... 16, 29

*Amgen Inc. v. Conn. Retirement Plans & Trust Funds*, 568 U.S. 455 (2013). ................................................. 19

*Bais Yaakov of Spring Valley v. ACT, Inc.*, 328 F.R.D. 6 (D. Mass. 10/24/2018), *aff'd*, 12 F.4th 81 (1st Cir. 2021). ................................ 42-43

*Bellagio, LLC v. NLRB*, 863 F.3d 839 (D.C. Cir. 2017). ....................... 21, 48

*In re Brewer*, 863 F.3d 861 (D.C. Cir. 2017). ........................ 18, 22

*Brown v. DirecTV, LLC*, 330 F.R.D. 260 (C.D. Cal. 3/29/2019). ................ 40

*Brown v. District of Columbia*, 928 F.3d 1070 (D.C. Cir. 2019). ..... 16, 20, 22

*Brown v. INS*, 775 F.2d 383 (D.C. Cir. 1985). ............................. 21

*Brown v. Nucor Corp.*, 785 F.3d 895 (4th Cir. 2015). ................................ 21

*Butela v. Midland Credit Management*, 2022 U.S. Dist. LEXIS 76602, 2022 WL 1237047 (W.D. Pa. 4/27/2022) ............................... 39

*Byrd v. Aaron's Inc.*, 784 F.3d 154 (3d Cir. 2015). ................................. 30-31

*Califano v. Yamaski*, 442 U.S. 682 (1979). .................................... 19

*Campbell v. AMTRAK*, 311 F.Supp.3d 281 (D.D.C. 2018)............... 37, 42-43

*Cherry v. Dometic Corp.*, 986 F.3d 1296 (11th Cir. 2021) . ................. 30, 42

*Coleman v. District of Columbia*, 306 F.R.D. 68 (D.D.C. 2015)................ 52

*Connecticut v. America Electric Power Co.*, 582 F.3d 309 (2d Cir. 2009).   45

*Cordoba v. DIRECTV, LLC*, 942 F.3d 1259 (11th Cir. 2019). ............. 31, 33

*Cty. Board v. Express Scripts Pharm., Inc.*, 996 F.3d 243 (4th Cir. 2021).. 44

*D.L. v. District of Columbia*, 713 F.3d 120 (D.C. Cir. 2013). .............. 20, 50

*D.L. v. District of Columbia*, 860 F.3d 713 (D.C. Cir. 2017). .................... 50

*Day v. Humana Insurance Co.*, 335 F.R.D. 181 (N.D. Ill. 6/1/2020).......... 43

*In re District of Columbia*, 792 F.3d 96 (D.C. Cir. 2015). ......................... 18

*Doe v. Shanahan*, 917 F.3d 694 (D.C. Cir. 2019). ....................................... 21

*Doe v. Trinity Logistics, Inc.*, 2018  WL. 1610514, 2018 U.S. Dist. LEXIS 56254 (D. Del. 4/3/2018)................................................................ 40

*Donaca v. Metro. Life Ins.Co.*, 2014 WL. 12597152, 2014 U.S. Dist. LEXIS 198899 (C.D. Cal. 1/22/ 2014). ................................ 41

*EQT Prod. Co. v. Adair*, 764 F.3d 347 (4th Cir. 2014). ....................... 30, 34

*Falk v. Brennan*, 414 U.S. 190 (1973). ....................................................... 47

*Fink v. National Sav. & Trust*, 772 F.2d 951 (D.C. Cir. 1985)............. 49, 52

*Finnegan v. Fountain*, 915 F.2d 817 (2d Cir. 1990).................................... 45

*Grubb v. Green Tree Servicing, LLC*, 2017 WL. 3191521, 2017 U.S. Dist. LEXIS 117465 (D.N.J. 7/26/2017)......................................................... 40

iv

*Harris v. Medical Transp. Mgmt.*, 300 F.Supp.3d 234 (D.D.C. 2018). ....... 47

*Hoyte v. District of Columbia*, 325 F.R.D. 485 (D.D.C. 2017). ................. 29

*Intel Corp. Investment Policy Committee v. Sulyma*, 140 S. Ct.
768 (2020). ........................................................................... 51

*Johansen v. One Planet Ops, Inc.*, 2018 WL 1558263, 2018 U.S. Dist.
LEXIS 47776 (S.D. Ohio 3/5/2018). ....................................... 40

 *In re Johnson*, 760 F.3d 66 (D.C. Cir. 2014). .............................................. 18

*Kenneth R. v. Tri-County CAP, Inc. v. Hassan*, 293 F.R.D. 254 (D.N.H.
9/17/2013). ........................................................................... 41

*Kifafi v. Hilton Hotels Ret. Plan*, 701 F.3d 718 (D.C. Cir. 2012). . 3, 9, 35, 51

*Kifafi v. Hilton Hotels Ret. Plan*, 616 F. Supp. 2d 7 (D.D.C. 2009). ........... 49

*Kifafi v. Hilton Hotels Ret. Plan*, 228 F.R.D. 382 (D.D.C. 2005). . 6, 9, 25-26

*Kifafi v. Hilton Hotels Ret. Plan*, 189 F.R.D. 174 (D.D.C. 1999). ..... 8, 25-26

*In re Lorazepam & Clorazepate Antitrust Litig.*, 289 F.3d 98 (D.C. Cir.
2002). ........................................................................... 18, 24-25

*In re Louisville-Jefferson Cnty*, 2022 U.S. App. LEXIS 12150 (6th Cir.
5/4/2022). ...................................................................... 34, 39, 43

*Mattson v. New Penn Finance, LLC*, 2018 WL 6735088, 2018 U.S. Dist.
LEXIS 218627 (D. Or. 11/6/2018). ......................................... 40

*McCullough v. City of Montgomery*, 2021 WL 2044900, 2021 U.S. Dist.
LEXIS 96861 (M.D. Ala. 5/21/2021). ..................................... 40

*Meijer, Inc. v. Warner Chilcott Holdings Co.*, 246 F.R.D. 293
(D.D.C. 2007). ...................................................................... 52

v

*Melgar v. CSK Automobile, Inc.*, 2015 WL. 9303977, 2015 U.S. Dist. LEXIS 170833 (N.D. Cal. 12/22/2015). ............................................... 40-41

*Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802 (7th Cir. 2012). ...................................................... 12, 17, 31-34, 42

*Microsoft Corp. v. Baker*, 137 S. Ct. 1702 (2017). ...................................... 22

*Mullins v. Direct Digital, LLC*, 795 F.3d 654 (7th Cir. 2015), *cert. denied*, 577 U.S. 1138 (2016). ................................................. 31, 37-38

*In re Nexium Antitrust Litigation*, 777 F.3d 9 (1st Cir. 2015). .............. 31, 33

*Nio v. United States Dept of Homeland Security*, 323 F.R.D. 28 (D.D.C. 2017). ....................................................... 16

*Orduno v. Pietrzak*, 932 F.3d 710 (8th Cir. 2019). ...................................... 31

*Panacci v. A 1 Solar Power, Inc.*, 2015 WL. 3750112, 2015 U.S. Dist. LEXIS 77294 (N.D. Cal. 6/15/2015). ........................................... 41

*Perez v. State Farm Mut. Auto. Ins.Co.*, 2011 U.S. Dist. LEXIS 164821 (N.D. Cal. 7/5/2011). ....................................... 41

*Peters v. Aetna Inc.*, 2 F.4th 199 (4th Cir. 2021). ........................................ 29

*In re Petrobas*, 862 F.3d 250 (2d Cir. 2017). ............................................... 29

*Quevedo v. Macy's, Inc.*, 2011 WL. 13124445 (C.D. Cal. 3/9/2011). ......... 43

*In re Rail Freight Fuel Surcharge Antitrust Litigation*, 725 F.3d 244 ` (D.C. Cir. 2013). ..................................................... 18

*Ramirez v. United States Immigration & Customs Enf't*, 338 F.Supp.3d 1 (D.D.C. 2018). .................................................... 38

*Rensel v. Centra Tech Inc.*, 2 F.4th 1349 (11th Cir. 2021). ..................... 29-30

*In re Rodriguez*, 695 F.3d 360 (5th Cir. 2012). ...................................... 31-32

*Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125 (9th Cir. 2016). ......... 31

*Sagar v. Kelly Automotive Group, Inc.*, 2021 WL. 5567408, 2021 U.S. Dist. LEXIS 227781 (D. Mass. 11/29/2021). ............................................. 40

*Shady Grove Orthopedic Associates v. Allstate Insurance Co.*, 559 U.S. 393 (2010). ............................................................................... 16

*Shane Villarino v. Pacesetter Personal Serv.*, 2022 U.S. Dist. LEXIS 117138, 2022 WL. 2308701 (S.D. Fl. 5/19/2022). ................................. 39

*Singleton v. Wulff*, 428 U.S. 106 (1976). ........................................ 18, 21, 44

*Snyder v. Ocwen Loan Servicing, LLC*, 258 F.Supp.3d 893 (N.D. Ill. 2017). .............................................................................. 40

*In re TD Bank, N.A. Debit Card Overdraft Fee Litigation*, 2018 U.S. Dist. LEXIS 243064 (D.S.C. 6/20/2018). ................................................. 34-35

*In re Toll Roads Litig. Penny Davidi Borsuk*, 2020 WL. 9597845, 2020 U.S. Dist. LEXIS 254278 (C.D. Cal. 12/30/2020). ........................... 40

*In re Veneman*, 309 F.3d 789 (D.C. Cir. 2002). .......................................... 18

*Wagner v. Taylor*, 836 F.2d 578 (D.C. Cir. 1987). ...................................... 19

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). ............................... 20

*Weidenhamer v. Expedia, Inc.*, 2015 WL. 7157282, 2015 U.S. Dist. LEXIS 154750 (W.D. Wash. 11/13/2015). ................................................. 41

*Wood, ex rel United States v. America Institute In Taiwan*, 286 F.3d 526 (D.C. Cir. 2002). ................................................................... 22

*Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532 (6th Cir. 2012). .. 31, 37-38

## STATUTES AND RULES

28 U.S.C. 1292(e). ..................................................................... 1

28 U.S.C. 1331 ........................................................................ 1

29 U.S.C. 1132(e)(1). ............................................................... 1

ERISA §3(5), 29 U.S.C. 1002(5). ........................................ 12, 46

ERISA §203(a), 29 U.S.C. 1053(a). ........................................... 4

ERISA §413, 29 U.S.C. 1113. ................................................. 51

ERISA §502(a)(3), 29 U.S.C. 1132(a)(3)............................. 1-2, 11

Fed. R. Civ. P. 15(a) ............................................................. 11

Fed. R. Civ. P. 23(a) ............................................................... 1

Fed. R. Civ. P. 23(b). .............................. 1, 16, 21, 23, 25, 33

Fed. R. Civ. P. 23(c)(1). ............................................ 1, 29, 35

Fed. R. Civ. P. 23(c)(2). ...................................................... 32

Fed. R. Civ. P. 23(c)(3). ............................................ 1, 32, 37

Fed. R. Civ. P. 23(c)(5). ........................................... 2, 49

Fed. R. Civ. P. 23(f). ......................... 1, 17-18, 21-24

26 C.F.R. 1.410(a)-7(f). ......................................................... 5

29 C.F.R. 2530.200b-3(b) ...................................................... 5

41 Fed. Reg. 56462 (1976)..................................................... 5

viii

LCvR 40.5. ................................................................ 8

# MISCELLANEOUS

Adv. Comm. Notes to 1998 Amendments. ............................................ 22-24

Robert G. Bone, "Justifying Class Action Limits: Parsing the Debates over Ascertainability and Cy Pres," 65 *Kan. L. Rev.* 913 (2017). 30-31, 41

Alba Conte & Herbert Newberg, *Newberg on Class Actions* (4th ed.)........ 35

Jordan S. Elias, *"The Ascertainability Landscape and the Modern Affidavit,"* 84 Tenn. L. Rev. 1 (2017) . ............................................... 30-31

Federal Judicial Center, *Managing Class Action Litigation: A Pocket Guide for Judges* (2005) . ........................................................ 16

Federal Judicial Center, *Manual for Complex Litigation* (4th ed.).............. 32

*Moore's Federal Practice and Procedure* (3d ed. 2016). ........................... 35

Geoffrey C. Shaw, Note, *"Class Ascertainability,"* 124 Yale L.J. 2354 (2015). ............................................................................ 30, 33

Rhonda Wasserman, "Ascertainability: Prose, Policy, and Process," 50 *Conn. L. Rev.* 695 (2018) . ........................................................ 30

**Jurisdictional Statement**

The District Court had subject matter jurisdiction over this action under 28 U.S.C. 1331 and 29 U.S.C. 1132(e)(1). This Court has jurisdiction pursuant to 28 U.S.C. 1292(e) and Fed. R. Civ. P. 23(f) which provides that "[a] court of appeals may permit an appeal from an [interlocutory] order granting or denying class-action certification under this rule ...."

**Pertinent Statutory Provisions**

Fed. R. Civ. P. 23(a) provides that "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all members only if" conditions related to numerosity, commonality, typicality, and adequate representation are satisfied. In pertinent part for proposed class actions seeking injunctive and "other appropriate equitable relief" under ERISA §502(a)(3), 29 U.S.C. 1132(a)(3), Rule 23(b)(2) then provides for certification if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."

Fed. R. Civ. P. 23(c)(1) provides that "[a]t an early practicable time after a person sues ... as a class representative, the court must determine by order whether to certify the class" and that any order certifying a class action "must define the class and the class claims, issues or defenses ...." Fed. R. Civ. P. 23(c)(3) provides

1

that "[w]hether or not favorable to the class, the judgment ... for any class certified under Rule 23(b)(1) or (b)(2) [must] include and describe those whom the court finds to be class members." Fed. R. Civ. P. 23(c)(5) further provides that "a class may be divided into subclasses that are each treated as a class under this rule."

**Statement of Issues**

1.     Whether it is "manifestly erroneous" for the District Court to deny class certification after Plaintiffs revised the proposed class definition to address the "fail-safe" issues the District Court had identified and directed Plaintiffs to "avoid" or "solve."

2.     Whether this Court should adopt a "categorical rule against" class certification under Rule 23 when a proposed class definition is labeled by defendants as "fail-safe," regardless of whether there has been a threshold analysis to show how the label "fits squarely" or why the proposed definition cannot be revised to avoid or solve that issue.

3.     Whether the District Court's additional "problems with the second and third subclasses as explained in the Court's [October 7, 2020] Memorandum Opinion" have been presented below and on appeal such that the denial of class certification may be remanded with orders to certify the proposed class.

**Statement of the Case**

On June 29, 2022, this Court "**ORDERED** that the petition for leave to appeal [under Fed. R. Civ. P. 23(f)] be referred to the merits panel to which this appeal is assigned. The parties are directed to address in their briefs the issues presented in the petition rather than incorporate those arguments by reference. In addition to addressing whether the petition should be granted, the parties are also directed to address in their briefs whether the district court properly denied the plaintiffs' motion for class certification under Fed. R. Civ. P. 23."

**A.    The Subclasses of Vesting Claim**

Plaintiffs are seeking class certification and injunctive and "other appropriate equitable relief" under ERISA §502(a)(3), 29 U.S.C. 1132(a)(3), for three subclasses of vesting claims under ERISA, each of which is represented by the named Plaintiffs. The denials of retirement benefits at issue were all made under the vesting claim procedure this Court affirmed in the *Kifafi* litigation, *see* 701 F.3d at 733, and involve circumstances where Hilton Defendants previously *provided* benefits in implementation of the relief in the *Kifafi* litigation.

**1.    Valerie White's "Fractional Years of Service" Claim**

Valerie R. White resides in Washington, D.C. Ms. White began work for the Washington Hilton on June 21, 1972, starting as a bus girl and becoming a waitress. JA28, 312. After a 1975 accident, she transferred to a front desk cashier

3

position. *Id*. She terminated employment with the Washington Hilton in March 1982, and went on to work in accounting for Hyatt Hotels until 2015. JA312.

In October 2014, Ms. White completed the Hilton vesting claim form authorized by the District Court and by this Court in the *Kifafi* litigation (see 702 F.3d at 733), and Class counsel included it in a batch of claims submitted to the Hilton Defendants. Defendants had represented to the District Court and Plaintiffs' counsel that Hilton was going to "count any claimed vesting service" and that it was "giving full credit for the additional or different dates of employment identified on your claim form," JA55-56.

However, rather than credit Ms. White with 10 years of service, which makes her vested under the Hilton Retirement Plan and the rules of ERISA as in effect before 1989,[1] Hilton only credited her with 9.52957 years of service–3.52957 years for her service from 6/21/1972 to 12/31/1975, plus 6 years for her service from 1/1/1976 to 3/26/1982. Hilton refused to apply ERISA's "hours of service" equivalencies to the "fractional" period to determine whether it constituted a "year of service" for vesting. That refusal left Ms. White short of ERISA's 10 years-of-service vesting requirement. JA42, 321-322.

Altogether, the Hilton Defendants have denied the appeals of at least 56

---

[1] Effective in 1989, ERISA §203(a), 29 U.S.C. 1053(a), lowered the requirement for vesting to five years of service.

4

other class members with "fractional" years of service like this–where the application of ERISA's "hours of service" equivalencies to those fractional periods would provide a critical year of service needed for vesting. JA41. In an August 2017 decision denying a motion to dismiss this claim, the District Court recognized that Hilton's practice of leaving "fractional" years "hanging" appears contrary to Department of Labor and Treasury regulations which require "fractional years [as of December 31, 1975 to] be converted to an hourly amount." JA19 (citing 41 Fed. Reg. 56462 (1976), 29 C.F.R 2530.200b-3(b), and 26 C.F.R. 1.410(a)-7(f) and (g)).

## 2.    Eva Juneau 's "Non-Participating Service" Claim

Eva Juneau worked at the Reno Hilton as a showroom server from April 22, 1991 until May 16, 1996, and then as a banquet server and bartender at the Flamingo Hilton Reno from May 17, 1996 until November 10, 2000. JA29, 314. Ms. Juneau continued to work at the same hotel after it became the Flamingo Reno and then the Golden Phoenix Reno until the hotel closed entirely in 2005. JA314. She currently manages a weed control company in Reno. *Id*.

Ms. Juneau claims a right to be vested based on her service at the Reno Hilton and her additional service with the Flamingo Hilton. JA47-48, 55. But the Hilton Hotels Retirement Plan only credited her Reno employment starting in August 1992 and stopped any vesting credit with the end of her employment at the

5

Reno Hilton on May 16, 1996, refusing to credit any of her employment with the Flamingo Hilton after that date. *Id*.

Ms. Juneau completed her vesting claim form under the process that this Court mandated in *Kifafi* and it was included in a batch of claims submitted to the Hilton Defendants in December 2014. However, despite the law on vesting having been changed effective in 1989 to require only five years of service and Ms Juneau having indisputably having worked for Hilton Hotels for over nine years, the Hilton Defendants counted only four years of service based on the period between August 1, 1992 and May 16, 1996 and refused to count her service before or after that. JA47-48, 323-324. Hilton refused to count her service before August 1992 on the basis that "you were employed at a non-participating property ... [s]pecifically, Reno Hilton was a non-participating property prior to August 1, 1992." JA47-48, 584-585. Hilton also refused to count any of her service with the Flamingo Hilton on the basis that "the Plan" did not have "actual hours records" for that "non-participating" employment. JA55, 584-585. Ms. Juneau has documents, including a scholarship awarded to her son by the Flamingo Hilton in May 2000, to show that her employment with the Flamingo Hilton continued past May 1996. JA325-328. In refusing to count all of her service, Hilton ignored not only ERISA and *Kifafi* but even a plan amendment that Hilton adopted voluntarily in 2002 in which it promised to count

6

"nonparticipation service." *See* 228 F.R.D. at 387.

Altogether, Hilton has denied vesting claims for at least 135 class members by refusing to count "non-participating" service at Hilton Properties when credit for such service would result in the number of years required for vesting.

### 3.    Peter Betancourt's "Heirs and Estates" Claim

The third Plaintiff, Peter Betancourt, is the son of a deceased Hilton employee, Pedro Betancourt, who worked at the New York Hilton from 1947 to 1979 and died in 1985 at the age of 71 without ever receiving any retirement benefits. JA56-57. Pedro Betancourt started as a busboy and worked his way up to chief executive steward. A Hilton Hotels newsletter features a photograph of him at his 1979 retirement party and recognizes that "he has been with Hilton for 32 years" and "proclaimed [him] the 'Steward of Stewards'" at the New York Hilton and "many Hilton properties" where he was sent by Hilton. JA315, 331. But despite that "32 years" of service, Hilton did not recognize that Mr. Betancourt was vested in any retirement benefit until the remedial orders in the *Kifafi* litigation required Hilton to review its service records for vesting. JA56-57, 329-330. If Pedro Betancourt had been vested, he could have received retirement benefits between his retirement in 1979 at age 65 and his death six years later, and his wife, Delia, could have received surviving spouse benefits from his death until her death thirteen years later in 1998. JA59.

7

In October 2014, Peter Betancourt submitted a vesting claim form for those retroactive payments as his parents' sole heir and the executor of their estates. JA56-57. However, even though Hilton had finally recognized in 2015 that his father should have been vested, Hilton denied Peter Betancourt's claim, now on the basis that "you [Peter Betancourt] are not the surviving spouse of P. Betancourt," maintaining that "the Plan document does not provide for a death benefit to anyone other than a spouse." *Id*.

There are 28 other estates and heirs like Peter Betancourt to whom Hilton is refusing to pay retroactive/back benefits that are owed to deceased participants and surviving spouses. JA319-320. Hilton's own "Flowchart" shows that it paid such back benefits to the heirs and beneficiaries of other deceased participants in the *Kifafi* remedies stage. JA355-377.

**B.    Procedural History**

This case was filed in May 2016 as a "related case" to *Kifafi, et al. v. Hilton Hotels Retirement Plan, et al.*, C.A. 98-1517 (D.D.C.), because it involves the "same subject matter" and the "same parties." LCvR 40.5(a). With no objection from the Defendants, the related case designation meant that the case was assigned to the same judge as in *Kifafi*. LCvR 40.5(b) and (c).

In the *Kifafi* litigation, the District Court certified a "benefit-accrual class" in 1999, 189 F.R.D. 174, and then after discovery, certified "four portions of the

8

[vesting] service counting claim for class treatment." 228 F.R.D. 382, 389. The District Court later ruled, and this Circuit affirmed, that Hilton had violated ERISA's benefit accrual and its vesting rules and ordered remedial equitable relief. *See* JA33-35 (¶¶18-22). The equitable relief for the vesting violations required Hilton to vest over 700 Hilton employees in accordance with the Court's rulings, and to "fund and administer a claim procedure open to all participants whose vesting status turns on nonparticipating service." 701 F.3d at 733; JA36-37 (¶¶24-26).

In the Court-mandated vesting claim process, Class counsel hired a class action administrator to conduct mailings to the individuals who were potentially vested based on the employment shown in Hilton's records. JA38-39 (¶¶30-32). As a result, Class counsel collected vesting claims for another 770 individuals and submitted their claims to Hilton's Plan administrator. *Id*. at ¶32. Hilton granted 169 claims but denied 601 others, stating in form letters prepared by its outside law firm that "you do not meet the minimum number of years of vesting service." *Id*. at ¶33. Hilton reversed its denials for 62 of those individuals, JA40 (¶36), but it continued to deny the appeals of 220 claimants who Class counsel believed should be vested, declining to vest them on grounds that correspond with the proposed subclasses, namely: (1) "you do not have the minimum number of years of vesting service" if "fractional years" are left with no application of an

9

"hours" standard; (2) "you were employed at a non-participating property" and "[v]esting credit is not available" for such employment; or (3) you are "not a surviving spouse" of a deceased participant who became vested under a review of the Plan's compliance with the vesting rules. JA41, 48, 57-58 (¶¶ 41, 58, 76).

During the relief stage of the *Kifafi* litigation, Class counsel asked the District Court to review the denials coming out of this vesting claim process. The District Court ruled, however, that its "supervisory jurisdiction" over Hilton's "denial of vesting claims submitted through the established claims process" had ended. Dkt.#434 (12/7/2015) in C.A. 98-1517, at 7. After exhausting internal appeals, Plaintiffs' counsel filed this action on May 6, 2016 on behalf of the three named plaintiffs and the subclasses of individuals who have been denied benefits.

Before any motion to certify the class was filed, Defendants moved to dismiss Plaintiffs' Complaint. The first motion was dismissed as moot after Plaintiffs amended the Complaint pursuant to Fed.R.Civ.P. 15(a)(1). Dkt.#17 in 16-cv-856. On August 18, 2017, the District Court denied Defendants' second motion to dismiss Claims One and Two. JA17, 22. The District Court ruled that "[t]he claims of Plaintiffs White and Juneau, and those of the putative subclasses associated with those claims, may proceed pursuant to ERISA sections 502(a)(1)(B) and 502(a)(3)." *Id*.; *see also* JA92.

The District Court initially dismissed Claim Three "without prejudice" to

10

address certain issues. Plaintiffs moved for leave to amend to reinstate the Claim, and that motion was granted under Fed. R. Civ. P. 15(a)(2) on January 24, 2018, on the basis that Plaintiffs "reasonably attempted to address the reasons for which th[e District] Court initially dismissed Claim Three." JA25-26.

Since the start of 2018, Plaintiffs' counsel have been trying to have this case certified as a class action. Defendants opposed Plaintiffs' first motion for class certification on the ground that Plaintiffs' claims did not satisfy Rule 23's commonality and typicality requirements. Dkt. #56. In addition to replying to Defendants' opposition, Plaintiffs moved for leave to add an additional named representative for the second subclass to foreclose any argument about typicality. Dkt.#58 at 1-2. The District Court denied Plaintiffs' motion to add an additional named representative on March 31, 2019, JA95, and denied a motion to reconsider on December 17, 2019. JA108.

Plaintiffs refiled the motion to certify the class on January 31, 2020. Defendants opposed that motion, too, this time including an argument that the proposed class definition was "fail-safe" because identification of the members of the proposed class was "impossible absent a merits ruling." JA204-205. Although Plaintiffs said this is not what was intended, they said that any issue could be addressed by revising the language to define class membership by whether persons "[h]ave been denied vested rights to retirement benefits by the Hilton

11

Defendants," without regard to whether those persons are ultimately determined to "have vested rights." JA236-237.

The District Court's October 7, 2020 decision denied the Plaintiffs' renewed motion, but it did so "**WITHOUT PREJUDICE**." JA241, 250, 256 (Mem. Op. at 1, 10, 16). The decision "agree[d]" with the Hilton Defendants that the introductory language in the class definition describing the members of the class as those who "[h]ave vested rights to retirement benefits that have been denied" was "impermissibly fail-safe," JA246 (Mem. Op. at 6) , but the Court stated that the denial was "**WITHOUT PREJUDICE**" in recognition that the "fail-safe problem" the District Court identified "can and often should be solved by refining the class definition," quoting *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012), and "permit[ting] Plaintiffs a final opportunity to amend their class definition in accordance with this Memorandum Opinion." JA250 (Mem. Op. at 10).

In addition to the issue with the introductory language, the District Court found "another fail-safe issue" in whether any non-participating service under the second subclass was rendered for Hilton as an "employer" under ERISA §3(5), 29 U.S.C. 1002(5). JA254 (Mem. Op. at 14). Because the District Court agreed with the Plaintiffs that this problem, too, could be "solved by refining the class

12

definition," the District Court identified "additional impediments [or "barriers"] to class certification" for the Plaintiffs to address in any renewed motion. JA241, 250 (Mem. Op. at 1, 10). A Minute Order dated November 8, 2020 also instructed the parties to "include all materials they would like the Court to consider" with the renewed briefing. JA14-15.

Plaintiffs filed a renewed motion with a revised class definition, a 43-page memorandum, and 19 exhibits and declarations to address the issues the District Court identified in the October 2020 Opinion, both the "fail-safe" issues and the so-called "additional impediments." The briefing related to the renewed motion was completed in January 2021. Under LCvR 7(f), the District Court found that oral argument "would not be of assistance" and, on March 22, 2022, denied the renewed motion, stating that the "problem" it identified in the October 7, 2022 Memorandum Opinion "remains the same" in the renewed motion. JA634, 640 (Mem. Op. at 1, 7). The District Court said "the rule against fail-safe classes" made certification "improvident" or "impermissible," JA634, 639, 643 (Mem. Op. at 1, 6, 10), without identifying how that issue had not been "avoided" or "solved," or looking at any way the District Court could address the issue itself.

The March 22, 2022 Opinion does not address how Plaintiffs' "refining" of the introductory language and the second subclass's definition did not "solve" or

13

"avoid" the "fail-safe" issues. Instead, the District Court reiterated its discussion of the introductory "fail-safe" language definition from the October 2020 decision. The only part of that discussion that did *not* appear again was about how issues with "fail-safe" definitions "can and often should be solved by refining the class definition" which is "more of an art than a science." *Compare* JA643 (3/22/22 Mem. Op. at 1, 7, 10), *with* JA241, 250 (10/7/20 Mem. Op. at 1, 10).

A footnote at the end of the March 22, 2022 Opinion stated that "Although the problems with the second and third proposed subclasses as explained in the Court's [October 7, 2020] Memorandum Opinion remain, *id.* at 10-16 [JA250-256]), the Court need not reach them here, having concluded that the broader class definition is an impermissible "fail-safe." JA643 (Mem. Op. at 10 n.5). The Opinion did not discuss the parts of Plaintiffs' renewed motion, or the supporting evidence, that address those problems, but only said "the problems ...remain." *Id.*

C.    **Plaintiffs' Proposed Class Definition**

After the revisions in the renewed motion filed on November 20, 2020, the Plaintiffs' class definition proposes to certify a class that consists of "any and all persons who:

      (a)    Are former or current employees of Hilton Worldwide, Inc. or Hilton Hotels Corp., or the surviving spouses or beneficiaries of former Hilton employees;

14

(b)    Submitted a claim for vested retirement benefits from Hilton under the claim procedures ordered by the District Court and the Court of Appeals in *Kifafi, et al., v. Hilton Hotels Retirement Plan, et al.*, C.A. 98-1517; and

(c)    Have been denied vested rights to retirement benefits by the Hilton Defendants':

    (1)    Use of "fractional" years of vesting service under an "elapsed time" method to count periods of employment before 1976 with no resolution of whether the fractions constitute a "year of service" under ERISA;

    (2)    Refusal to count "non-participating" service for vesting purposes, notwithstanding that the service was with a hotel property that Hilton operated under a management agreement, that the Hilton Defendants counted service at the same "Hilton Properties" in *Kifafi* and represented to this Court and the D.C. Circuit in *Kifafi* that Hilton had counted "non-participating" service with Hilton for vesting, and that the "records requested and received from Defendants do not identify any non-participating property that is also not a Related Company"; and

    (3)    Denial of retroactive/back retirement benefit payments to heirs and estates on the basis that the claimants are "not the surviving spouse" of deceased vested participants.

JA309-310. The renewed motion revised the previously-proposed class definition to "avoid" or "solve" the "fail-safe" issue the District Court described in its October 7, 2020 Opinion by making changes to the introductory language to subparagraph (c) and by making changes to the language defining the second subclass in subsection (c)(2).

15

**Summary of Argument**

Rule 23 "creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action." *Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010). "The suit must satisfy the criteria set forth in [Rule 23](a) (*i.e.*, numerosity, commonality, typicality, and adequacy of representation), and it also must fit into one of the three categories described in subdivision (b)." Neither the district courts nor the courts of appeals are "free to amend" Rule 23 to adopt additional requirements. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

The class action rules allow "the fair and efficient resolution of legitimate claims of numerous parties ... that might otherwise evade legal enforcement." Federal Judicial Center, *Managing Class Action Litigation: A Pocket Guide for Judges* ( 2005), at 1. In particular, "Rule 23(b)(2) exists so that parties and courts ... can avoid piecemeal litigation when common claims arise from systemic harms that demand injunctive relief." *Brown v. District of Columbia*, 928 F.3d 1070, 1083 (D.C. Cir. 2019). *Accord, Nio v. United States Dep't of Homeland Sec.*, 323 F.R.D. 28, 34-35 (D.D.C. 2017) (plaintiffs are "challenging the application of standardized policies that generally apply to the class").

 Certification of the proposed class should not have been difficult in a case

16

like this. Plaintiffs are challenging the denials of benefits to each of the three subclasses on the basis of common ERISA requirements, as had been certified in *Kifafi*, and Hilton's denial letters provide identically-worded reasons for the denials of the claims made by the members of each of the three proposed subclasses. All three of the identically-worded reasons, moreover, represented reversals by Hilton from the remedies provided in *Kifafi*, *i.e.*, for participants who Hilton had not previously vested, Hilton had applied ERISA's hours of service rules to count "fractional years" of vesting service and "non-participating" service and it had paid back benefits to non-spousal "heirs and estates."

As the Seventh Circuit stated in *Messner,* 669 F.3d at 825, the "fail-safe" problem on which the District Court based its denial of class certification is "more of an art than a science." The District Court's request for a "categorical rule against" fail-safe classes is inconsistent with that determination and with *Messner*'s related rejection of "flatly denying class certification on this basis." 669 F.3d at 825. The District Court's request also raises questions of legal authority because Rule 23's requirements do *not* include a "categorical rule against" fail-safe classes, particularly not for proposed classes under Rules 23(b)(1) and (b)(2).

Since 1998, Fed. R. Civ. Proc. 23(f) has provided that "[a] court of appeals may permit an appeal from an order granting or denying class-action certification.

17

On the basis of the considerations that led to the adoption Rule 23(f), this Circuit

has identified three non-exclusive categories of "circumstances" in which review of

an order granting or denying class certification "ordinarily is appropriate":

> (1) "when there is a death-knell situation for either the plaintiff or defendant that is independent of the merits of the underlying claim, coupled with a class certification decision by the district court that is questionable";
>
> (2) "when the certification decision presents an unsettled and fundamental issue of law relating to class actions"; and
>
> (3) "when the district court's decision is manifestly erroneous."

*In re Brewer*, 863 F.3d 861, 873-76 (D.C. Cir. 2017); *accord*, *In re District of*

*Columbia*, 792 F.3d 96, 98 (D.C. Cir. 2015); *In re Johnson*, 760 F.3d 66, 71 (D.C.

Cir. 2014); *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 253

(D.C. Cir. 2013); *In re Veneman*, 309 F.3d 789, 793-94 (D.C. Cir. 2002); *In re*

*Lorazepam & Clorazepate Antitrust Litig.*, 289 F.3d 98, 99-100 (D.C. Cir. 2002).

As described below, Plaintiff's petition fits within each of these circumstances, even

though one is "ordinarily" enough.

    As mentioned, the District Court indicated in a footnote that other "problems"

with the proposed class definition "remained" beyond the fail-safe issue, but that the

District Court "need not reach" them. To avoid another appeal, this Court has the

authority under *Singleton v. Wulff*, 428 U.S. 106, 121 (1976), the case law under

18

which is discussed below, to reverse or affirm on any ground presented to the District Court. Here, Plaintiffs fully briefed each of those problems below, including offering additional evidence, so that a remand for another round of briefing and potentially another interlocutory appeal should not be necessary.

**Standard of Review**

The grant or denial of class certification "is committed in the first instance to the discretion of the district court." *Califano v. Yamaski*, 442 U.S. 682, 703 (1979). Conclusions of law are not, however, committed to the district court's discretion, but are reviewed for error. In *Abrams v Interco Inc.*, 719 F.2d 23, 30-31 (2d Cir. 1983), Judge Friendly wrote that "a court of appeals can no more tolerate divergence by a district judge from the principles it has developed on this subject [the denial or grant of class action status] than it would under a standard of full review." Consistent with this, *Wagner v. Taylor*, 836 F.2d 578, 586 (D.C. Cir. 1987), determined that class certification rulings must be "carefully" reviewed "to rectify any erroneous application of legal criteria and any abuse of discretion." At the class certification stage, the court's mission is, moreover, limited: It is not to pass judgment on the merits, but to select the method best suited to adjudication of the controversy fairly and efficiently." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 460 (2013). "Merits questions may be considered to the

extent – but only to the extent – that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *D.L. v. District of Columbia*, 713 F.3d 120, 125-26 (D.C. Cir. 2013).

Following these principles, a district court may not "materially misappl[y] the requirements of Rule 23." *Brown v. Nucor Corp.*, 785 F.3d 895, 902 (4th Cir. 2015). District courts must adhere, in particular, to the Supreme Court's and this Court's precedents on the commonality requirement that "even a single common question will do," *i.e.*, "a single aspect or feature of the claim [that] is common to all proposed class members." *D.L. v. District of Columbia*, 713 F.3d 120, 129 (D.C. Cir. 2013). Following *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011), this Court refined the initial focus on "common questions" to hold, more precisely, that "[w]hat matters to class certification ... is 'the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation,'" as compared to "when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant." *Brown v. District of Columbia*, 928 F.3d 1070, 1080, 1082 (D.C. Cir. 2019).

It is a familiar standard for "abuse of discretion" that any findings of fact must be "supported by substantial evidence in the record considered as a whole." "[T]he record considered as a whole" means the district court must "take into account contradictory evidence or evidence from which conflicting inferences

20

could be drawn." *Bellagio, LLC v. NLRB*, 863 F.3d 839, 847 (D.C. Cir. 2017). In this circuit, as well as others, counsel's statements of fact are "not evidence." *See, e.g., Wood, ex rel United States v. Am. Inst. In Taiwan*, 286 F.3d 526, 535 (D.C. Cir. 2002); *Brown v. INS*, 775 F.2d 383, 388 (D.C. Cir. 1985). The District Court also "cannot simply substitute ... *ipse dixit* for evidence." *Doe v. Shanahan*, 917 F.3d 694, 701 (D.C. Cir. 2019).

This Court has discretion to grant a petition for interlocutory review under Fed. R. Civ. P. 23(f). It also has discretion to resolve issues that were passed upon below because "[t]he matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases." *Singleton v. Wulff, supra*, 428 U.S. at 121.

**Argument**

This is a proposed Rule 23(b)(2) class action where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."[2] Rule 23(b)(2) exists so that parties and courts

---

[2] Plaintiffs requested class certification under Rule 23(b)(3) in the alternative, JA305, but in *Kifafi* the classes were certified under Rule 23(b)(2) alone. 189 F.R.D. at 177; 228 F.R.D. at 385.

"can avoid piecemeal litigation when common claims arise from systemic harms that demand injunctive relief." *Brown v. District of Columbia*, 928 F.3d 1070, 108 (D.C. Cir. 2019).

The Hilton Defendants do not dispute that they previously provided benefits to the same subclasses in the remedy stage of the *Kifafi* litigation, but that they have denied those claims here for individuals in the three proposed subclasses using identically-worded reasons in form denial letters that were sent to the individuals in each of those proposed subclasses. And yet, after three years of motions, the District Court has not certified a single class or subclass.

Rule 23(f) was added to provide for a permissive interlocutory appeal when the plaintiff is confronted with situations like this. As discussed further below, Plaintiffs' Petition fits each of the circumstances in which an interlocutory Rule 23(f) appeal "ordinarily is appropriate."

## I. Plaintiffs' Petition Fits the Circumstances in Which an Interlocutory Rule 23(f) Appeal "Ordinarily Is Appropriate," Including When the District Court Advises of an "Unsettled and Fundamental" Issue.

The history of Rule 23(f) is detailed in the Advisory Committee Notes, and in *Microsoft Corp. v. Baker*, 137 S.Ct. 1702, 1709-10 (2017) (opinion by Ginsburg, J.). Rule 23(f) was adopted in recognition that "[a]n order denying certification may confront the plaintiff with a situation in which the only sure path to appellate review is by proceeding to final judgment on the merits of an

individual claim that, standing alone, is far smaller than the costs of litigation."
1998 Advisory Committee Notes. The Advisory Committee Notes and *Baker*
recognize that permission to appeal under Rule 23(f) "is most likely to be granted
when the certification decision turns on a novel or unsettled question of law."

Plaintiffs' Petition fits each of the circumstances in which this Court has
ruled that it "ordinarily is appropriate" to grant a Rule 23(f) Petition. *In re Brewer*,
*supra*, 863 F.3d at 874. First, the District Court's March 22, 2022 decision is
"manifestly erroneous." The "fail-safe" issue does *not* apply to the proposed Rule
23(b)(2) class definition as revised by the Plaintiffs because Plaintiffs' proposed
definition "as presently defined" uses only objective criteria to define who is in the
class, and does *not* depend on the ultimate question of liability.

Second, the District Court's decision presents an "unsettled and
fundamental issue of law relating to class actions" because the District Court
recognizes in the March 22, 2022 decision that it is applying a rule of law to deny
certification that is "not entirely settled" in this Circuit, JA640-641 (Mem. Op. at
7-8), and that this issue is also a "fundamental issue of law relating to class
actions." JA687-88. Third and finally, this is a "death knell situation" because if
an interlocutory appeal of the denial of class certification is not permitted now, it
will mean that an appeal of the denial of class certification can occur only after
obtaining individual final judgments with respect to the named plaintiffs, and that

such an appeal will still not produce a final classwide judgment, but only a remand for further class proceedings, including discovery.

The 1998 Advisory Committee Notes state that the district court's "advice on the desirability of appeal" should be carefully considered. Here, the District Court's March 22, 2022 decision offered "advice on the desirability of appeal" by pointing out how the "absence of a clear directive from the D.C. Circuit ... leaves open the question of the [fail-safe] rule's applicability," and that two judges in this District have certified classes where it was not "definitively" established that the proposed definitions were "fail-safe" definitions. JA640-641 (Mem. Op. at 7-8). On April 13, 2022, the District Court issued an additional Order staying this matter pending this Circuit's "resolution of Plaintiffs' Petition ... for Leave to Appeal Pursuant to FRCP 23(f)." JA687. That Order advises that, in the District Court's view, "whether a fail-safe class definition is permissible is likely an 'unsettled and fundamental issue of law relating to class actions,'" as described in *In re Lorazepam & Clorazepate Antitrust Litig.*, 289 F.3d 98, 99-100 (D.C. Cir. 2002). JA688.

Defendants' response to the Petition challenged the District Court's advice that this issue is "unsettled," but the only point Defendants made is that "a lack of binding authority" does not always mean "that the issue is unsettled such that interim review could be appropriate." Opp. (Doc. 1943358) at 13-14. Defendants'

24

response did not respond to the advice in the District Court's April 13, 2022 Order

that this issue is both "unsettled and fundamental."

Defendants' response also contested that the District Court's denial of class

certification is a "death knell" by contending that the plaintiffs must "assert [and

show] that the District Court's decision will prevent them from litigating the case

further." Opp. (Doc. 1943358) at 11. That is not what "death knell" means in this

context. A denial of class certification is a "death knell" when, without

certification, "the representative plaintiff's claim is too small to justify the expense

of litigation." *In re Lorazepam & Clorazepate Antitrust Litig.*, 289 F.3d 98, 102

(D.C. Cir. 2002). Here, the fee agreements with the representative plaintiffs show

this case was taken on that basis. JA396-401.

## II.    The Proposed Class Definition in Plaintiffs' Renewed Motion Is *Not* a "Fail-Safe" Definition.

In the *Kifafi* litigation, the District Court certified benefit accrual and

vesting classes, finding that "Rule 23(b)(2) is the most suitable form for this class"

because Defendants' practices were "applicable across the board to all class

members, thereby making appropriate final injunctive relief or corresponding

declaratory relief with respect to the class as a whole." 189 F.R.D. at 177; *accord,*

228 F.R.D. at 385. The definitions of the benefit accrual class and the vesting

subclasses used the same language to which Defendants objected here, defining

25

the class as all current or former employees "who have, or may obtain, a vested

right to pension benefits from the Hilton Hotels Retirement Plan" and adding

criteria related to the ultimate issues, *i.e.*, "accru[ing] pension benefits at the

accrual rates that ERISA requires" and "improperly" using a 1000 hours of service

standard. 189 F.R.D. at 180; 228 F.R.D. at 389. Defendants did not object that "the

rates that ERISA requires" or "improperly" depended, in part, on the ultimate

issues.

But here, Defendants labeled Plaintiffs' proposed class definition "fail-safe"

in opposing Plaintiffs' motion to certify. JA204-205. Defendants argued this even

though their counsel had said in a class discovery conference that they did not

need assistance in identifying who the members of each subclass are, JA236, and

documents produced in class discovery include minutes of meetings, worksheets,

and tables denying benefits for reasons that correspond with the proposed

subclasses. *See* JA338-341, 342-347, and 348-352.

The District Court agreed with Defendants' "fail-safe" label and denied the

motion to certify, but it did so "**WITHOUT PREJUDICE**" and with the

"opportunity to amend their class definition in accordance with" the District

Court's opinion, following the Seventh Circuit's decision in *Messner* that the

"fail-safe problem" "can and often should be solved by refining the class

definition." JA250 (Mem. Op. at 10).

In response to the denial of certification "WITHOUT PREJUDICE" with the "opportunity to amend the class definition," Plaintiffs filed a renewed motion revising the language the District Court identified to change "[h]ave vested rights to retirement benefits ..." to "[h]ave been denied vested rights to retirement benefits ...." JA307. Plaintiffs also revised the definition of the second subclass to change the part that referred to the Defendants "[r]efusal to count non-participating service for vesting purposes notwithstanding that the service was with the 'employer' under ERISA §3(5)" to say, "notwithstanding that the service was with a hotel property that Hilton operated under a management agreement." *See* JA637 (redline showing the changes). These revisions made membership in the proposed class entirely "objective" and eliminated the text to which the District Court had objected. If the District Court adopted the class definition, it would bind class members to the District Court's judgment on the merits, "[w]hether or not favorable to the class."

The District Court's March 22, 2022 decision nevertheless concluded that "Plaintiffs' proposed class definition remains 'fail-safe'" "as presently defined" and characterized this as a "fatal flaw" that makes class certification "improvident" and "impermissible." JA634, 639-640, 643 (Mem. Op. at 1, 6-7, 10). The closest the March 22, 2022 decision came to explaining how the "fail-safe problem" "remains the same" is a statement that "to determine who qualifies

27

as a member of the class, the Court must first make legal determinations on the propriety of the alleged actions as to each of the three subclasses." JA640 (Mem. Op. at 7). With respect, this is manifestly erroneous because the proposed class definition does *not* require the Court to "first make legal determinations on the propriety" of not counting "fractional years of service" using ERISA's "hours of service" standards, not counting years of "non-participating service," or not paying retroactive/back benefits to "heirs or estates" of class members. *See* pp. 14-15 *supra*.

Instead of explaining how the "fail-safe problem" "remains the same," the March 22, 2022 decision restated, almost verbatim, what it called a "broader discussion of the state of the law on fail-safe class definitions." *Compare* JA639-642 (Mem. Op. at 6-9), *with* JA245-250 (10/7/20 Mem. Op. at 5-10). In this "broader discussion," the District Court asserts that decisions in the First, Sixth, Seventh, and Eighth Circuits establish a "categorical rule against fail-safe classes," that decisions in the Third, Fourth, Ninth, and Eleventh Circuits show "approval" of "such a rule," and that only the Fifth Circuit "stands as an outlier" "reject[ing] the applicability of the rule." JA641 (Mem. Op. at 8). The District Court's descriptions of the law in this district as well as other circuits must, of course, be reviewed de novo (as Plaintiffs do below).

A. **When a Defendant Labels a Proposed Class Definition "Fail-Safe," the Threshold Question Is Whether that Categorization "Fits Squarely" and If So, If the Definition Can Be Revised to "Avoid" or "Solve" the Issue.**

"Courts are not free to amend [the Federal Rules of Civil Procedure] outside the process Congress ordered." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). The principal requirement the circuits have found "implicit" in Rule 23 is a requirement that the members of a proposed class be "readily identifiable" or "ascertainable." *In re A.H. Robins Co.*, 880 F.2d 709, 728 (4th Cir. 1989) ("establishment of a class action implicitly requires ... that there be an identifiable class"). The most analogous codified requirement to this in Rule 23 is Rule 23(c)(1)(B), which provides that the "order that certifies a class must define the class and the class claims, issues, or defenses."

In *Hoyte v. District of Columbia*, 325 F.R.D. 485, 489 n.3 (D.D.C. 2017), Judge Cooper observed that an "ascertainability" requirement is *not* in the text of Rule 23, but ruled that it was satisfied in any event in the case before him. Since *Hoyte*, "ascertainability" has been even more widely accepted. *See In re Petrobas Sec. Litig.*, 862 F.3d 250, 257 and 264-69 (2d Cir. 2017) ("class is ascertainable if it is defined using objective criteria that establish a membership with definite boundaries"); *Peters v. Aetna Inc.*, 2 F.4th 199, 242 (4th Cir. 2021) (ascertainability is required but district court analyzed it "too rigidly"); *Rensel v.*

29

*Centra Tech Inc.*, 2 F.4th 1359, 1361 (11th Cir. 2021) (district court erred in requiring plaintiffs to establish an "administratively feasible method for identifying class members"). Under this implicit "ascertainability" requirement, "[t]he plaintiffs need not be able to identify every class member at the time of, certification. But '[i]f class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate.'" *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014).

"One of the most hotly contested issues in class action practice today" is not about any "fail-safe" elements in proposed class definitions, but about whether the implied "ascertainability" requirement can be made "stricter" or "heightened" by adding a requirement that the determination of class members be shown to be "administratively feasible." Rhonda Wasserman, "Ascertainability: Prose, Policy, and Process," 50 *Conn. L. Rev.* 695, 711-12 (2018); *see also* Robert G. Bone, "Justifying Class Action Limits," 65 *Kan. L. Rev.* 913, 924 (2017); Jordan S. Elias, "The Ascertainability Landscape and the Modern Affidavit," 84 *Tenn. L. Rev.* 1, 5 (2017); Geoffrey C. Shaw, Note, "Class Ascertainability," 124 *Yale L.J.* 2354, 2373 (2015). The circuits are divided on whether this "heightened" requirement is consistent with an already-implicit requirement to codified rules. *Compare Byrd v. Aaron's,* 784 F.3d 154, 163-164 (3d Cir. 2015), *with Cherry v. Dometic Corp.*, 986 F.3d 1296, 1304 (11th Cir. 2021).

There is little disagreement in the case law, or the legal scholarship, about what the term "fail-safe class" generally describes: It describes a class in which class membership "depends on whether the person has a valid claim" which is "unascertainable prior to a finding of liability in the plaintiffs' favor." *Byrd*, 784 F.3d at 167[3] There is some uncertainty about whether a class definition that depends on an ultimate statutory issue that is intertwined with "objective criteria" is properly considered "fail-safe." *See* Elias, "The Ascertainability Landscape," *supra*, 84 *Tenn. L. Rev.* at 7-8; Bone, "Justifying Class Action Limits," *supra*, 65

---

[3] *See also In re Nexium Antitrust Litig.*, 777 F.3d 9, 22 n.19 (1st Cir. 2015) (fail-safe definition is one where class membership is defined by the "ultimate question of liability"); *In re Rodriguez*, 695 F.3d 360, 369-70 (5th Cir. 2012) ("fail-safe class is a class whose membership can only be ascertained by a determination of the merits of the case because the class is defined in terms of the ultimate question of liability"); *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 538 (6th Cir. 2012) ( "fail-safe" class is "a class that cannot be defined until the case is resolved on its merits"); *Messner*, 669 F.3d at 825 ("fail-safe" is where "a class member either wins or, by virtue of losing, is defined out of a class and is therefore not bound"); *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 660 (7th Cir. 2015), *cert. denied*, 577 U.S. 1138 (2016) ("key to avoiding this [fail-safe] problem is to define the class so that membership does not depend on the liability of the defendant"); *Orduno v. Pietrzak*, 932 F.3d 710, 716-17 (8th Cir. 2019) (this "sort of class ... would allow putative class members to seek a remedy but not be bound by an adverse judgment"); *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1138 n.7 (9th Cir. 2016) ("defining the class to include only those individuals who were 'injured' ... threatens to create a 'fail safe' class, one that is defined so narrowly as to "preclude[] membership unless the liability of the defendant is established"); *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1277 (11th Cir. 2019) ("fail-safe" classes are ones "whose membership can only be determined after the entire case has been litigated and the court can determine who actually suffered an injury").

*Kan. L. Rev.* at 924. There are also very strong textual and policy reasons for

limiting any "categorical rule against" use of the ultimate issue to *Rule 23(b)(3)*

class actions. No less an authority than the *Manual of Complex Litigation*

observes that "Rule 23(b)(1) or (b)(2)" class actions do *not* require "a definition

that will permit identification of individual class members." *Id*. at 21.222. This is

because, under Rule 23(c)(2), notice of class certification to "all members" of the

class is *not* required for Rule 23(b)(1) or (b)(2) classes. Rule 23(c)(3) provides,

moreover, that "[w]hether or not [the judgment is] favorable to the class, the

judgment ... for any class certified under Rule 23(b)(1) or (b)(2) [must] include

and describe those whom the court finds to be class members." Thus, pursuant to

Rule 23(c)(3), there is no danger or risk that a Rule 23(b)(1) or (b)(2) class

definition that includes the ultimate issue is going to produce a judgment in favor

of the defendant that 'binds no one' in the certified class. In any such a case, a

defendant simply needs to invoke Rule 23(c)(3).

In this case, the District Court recognized that the Fifth Circuit in *In re*

*Rodriguez*, 695 F.3d 360, 370 (5th Cir. 2012) rejected a "prohibition" against fail-

safe classes because this "would preclude certification of just about any class of

persons alleging injury from a particular action" by which they are "linked." But

after recognizing this, the District Court then seems to have read *Rodriguez*'s

rejection of a "prohibition" as an "outlier" implying that the "eight" other circuits

that have discussed "fail-safe" classes have all adopted or approved of a "categorical rule against" them. *See* JA641 (Mem. Op. at 8). That is simply not supported. Indeed, in *Messner*, the case on which the District Court primarily relied, the Seventh Circuit rejected "flatly denying" certification on this basis, and no circuit precedent has held that Rule 23 contains a "categorical rule against" a class definition that, to any degree, "depends on whether the person has a valid claim."

The reason most circuits steer away from adopting a "categorical rule against" any use of the ultimate question, even in a Rule 23(b)(3) class definition, is because "there is an almost inevitable tension between excluding all non-injured parties from the defined class, and including all injured parties in the defined class." *In re Nexium Antitrust Litig.*, *supra*, 777 F.3d at 22*, accord, Cordoba*, *supra*, 942 F.3d at 1277 (rule that a Rule 23(b)(3) class definition must "not include any individuals who do not have standing ... would run the risk of promoting so-called "fail-safe" classes, whose membership can only be determined after the court can determine who actually suffered an injury); Shaw, Note, "Class Ascertainability," *supra*, 124 *Yale L.J.* at 2367. For these reasons, *Messner* determined that "[d]efining a class so as to avoid ... being over-inclusive and, on the other hand, the fail-safe problem is more of an art than a science" and that any issue with whether a class definition is "fail-safe" "can and often should

33

be solved by refining the class definition." 669 F.3d at 825. As stated, rather than "flatly denying class certification on that basis," *Messner remanded* for further proceedings consistent with the opinion. 669 F.3d at 825-26. *Accord*, *EQT Prod. Co. v. Adair*, 764 F.3d 347, 360 (4th Cir. 2014) (remanding to consider whether the proposed classes could be defined without creating a fail-safe class).

Regardless of how proposed class definitions should be viewed that are under Rule 23(b)(2) or that include an element of the ultimate issue along with objective criteria in order to prevent an unduly "overbroad" class, the consensus seems to be: Why litigate this if a "fail-safe" element can be revised in favor of "objective" criteria, at least without excessive overbreadth. The case law shows, at the same time, that if a proposed class definition includes "text ... presuming the illegality of Defendant's actions," revising that part of the text should be the end of the matter. *In re Louisville-Jefferson Cnty,* 2022 U.S. App. LEXIS 12150, *11-12 (6th Cir. 5/4/2022), responded to defendants' argument "that the district court certified an improper fail-safe class":

> The district court did not certify a fail-safe class. To the contrary, it deleted text from Plaintiffs proposed class definition presuming the illegality of Defendant's actions—text that could have made the class fail-safe. As certified, class membership is easily determined by simple objective criteria [related to impounded car assessments].The existence or amount of those assessments does not depend on the outcome of the trial, and therefore does not create a fail-safe class.

*Accord, In re TD Bank, N.A. Debit Card Overdraft Fee Litig.*, 2018 U.S. Dist.

LEXIS 243064, *4 (D.S.C. 6/20/2018) (the "revised class definition does not suffer from this pitfall, and thereby avoids the impermissibility of a fail-safe class with which the Court was initially concerned").

As occurred in *Louisville-Jefferson Cnty*, a district court often does not even have to send a proposed definition back to the party proposing it because district courts have discretion to redefine a class in a manner that addresses these concerns. *See* Fed.R.Civ.P. 23(c)(1) (requiring the "order that certifies a class action" to "define the class" and providing that the order "may be altered or amended before final judgment"); *Moore's Federal Practice and Procedure* § 23:21 (3d ed. 2016) ("court may, in its discretion, grant certification but modify the definition of the proposed class to provide the necessary precision to correct other deficiencies"); Alba Conte & Herbert Newberg, *Newberg on Class Actions*, §8:12 (4th ed. 2002) ("When a class definition is not acceptable, judicial discretion can be utilized to save the lawsuit from dismissal").[4]

**B.    The Proposed Definition in This Case Is Like the Class Definitions in *Ramirez*, *Afghan & Iraqi Allies*, and the Scores of Other Cases Where a "Fail-Safe" Label Does *Not* Fit.**

In the case law, the threshold issue before any further analysis is whether a

---

[4] In the *Kifafi* class action, this Court also observed that the District Court did *not* just adopt Plaintiff's proposed definitions, but exercised its discretion to craft "reasonable" ones. 701 F.3d at 732.

proposed class definition is for a "fail-safe" class under established usage. As shown further below, defense arguments that proposed class definitions are "fail-safe" very frequently fall short on this threshold issue, so that no more analysis is required.

The issue the District Court's March 22, 2022 Opinion never addressed was whether the class definition that Plaintiffs revised and proposed is *not* a "fail-safe" class definition because class membership is *not* defined by the ultimate issue. With respect, the District Court's assertion that the District Court must "first make legal determinations on the propriety of the alleged actions," JA640 (Mem. Op. at 7), is manifestly erroneous. Under the revised class definition, the District Court is *not* required to "first make legal determinations on the propriety of" whether counting vesting service "with no resolution of whether fractions constitutes a 'year of service.'" For instance, the District Court simply needs to issue an order defining the Valerie White-led subclass based on whether Hilton has denied vested rights by the "common" issue of not crediting "fractional" years. The class definition provides an objective class definition that satisfies Rule 23(c)(1)(B) ("An order that certifies a class action must define the class and the class claims, issues, or defenses ...."). If the District Court ultimately were to rule in favor of the Hilton Defendants, despite the "doubt[s]" about Hilton's positions that the District Court expressed in rejecting

Defendants' motion to dismiss, JA19, Ms. White and the other members of the proposed subclass will be bound by that decision. Indeed, as stated, Rule 23(c)(3) requires the Court's "judgment" to describe who is in the class "whether or not [the judgment is] favorable to the class."

No circuit court has adopted a "categorical rule against" class certification on the basis that a proposed class definition is a "fail-safe" definition without first finding that the proposed definition "fits squarely" in the "fail-safe" category. In fact, two of the circuit court cases the District Court cited in addition to *Messner*, *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532 (6th Cir. 2012), and *Mullins v. Direct Digital, LLC*, 795 F.3d 654 (7th Cir. 2015), *cert. denied*, 577 U.S. 1138 (2016), determined that "[t]his is not a proscribed fail-safe class," 693 F.3d at 538, and that the proposed definition did "not create a fail-safe class." 795 F.3d at 661.

The one example of an impermissible "fail-safe" class to which the District Court pointed was *Campbell v. AMTRAK*, 311 F.Supp.3d 281 (D.D.C. 2018). In *Campbell*, the proposed class was defined as "All Black CBA employees who have been discriminated against because of their race or color in regard to competitive promotion selection." *Id*. at 314. As Judge Sullivan described it, the problem with this proposed class definition was that it "makes [class] membership contingent on individualized merits determinations as to

37

whether the individual suffered discrimination because of his race or color. *Id*.

Plaintiffs' proposed definition here is *not* like the one in *Campbell* because the Plaintiffs' revised class definition uses "objective," non-individualized criteria to define the class. For instance, it provides that members of the subclass led by Ms. White must have a "fractional" year of service that if ERISA's hours of service rules were applied would produce an additional year of service for vesting. *See* subsection (c)(1) on page 15 *supra*.

Rather than being like *Campbell*, this case is like *Ramirez v. United States Immigration & Customs Enf't*, 338 F.Supp.3d 1, 49 (D.D.C. 2018), and *Afghan & Iraqi Allies v. Pompeo*, 334 F.R.D. 449, 464 (D.D.C. 2020), where Judges Contreras and Chutkan determined that proposed class definitions were *not* impermissibly "fail-safe." *Afghan & Iraqi Allies* rejected a defense argument that class members "stand to benefit from success, but will not be bound by a loss," stating, "That is not the case here." 334 F.R.D. at 464. *Ramirez* similarly ruled that "the class proposed is none the less ascertainable and meets any such requirement for certification." 338 F.Supp.3d at 49.

There are scores of decisions like *Ramirez* and *Afghan & Iraqi Allies* (and like *Young* and *Mullins* in the Sixth and Seventh Circuits) rejecting efforts by defendants to defeat class certification by labeling proposed class definitions as having "fail-safe" problems. Even since Plaintiffs filed their Rule 23(f) Petition in

early April of 2020, there have been still more. *See In re Louisville-Jefferson Cnty., supra*, 2022 U.S. App. LEXIS 12150, *11-12 (6th Cir. 5/4/2022); *Shane Villarino v. Pacesetter Pers. Serv.*, 2022 U.S. Dist. LEXIS 117138, *13-14, 2022 WL 2308701, *4 (S.D. Fl. 5/19/2022) ("Pacesetter also argues that the transportation and equipment subclasses are "failsafe" classes and, therefore, should not be permitted to proceed.... Pacesetter argues that the Court will need to evaluate the merits of the case by determining whether each potential class member was in fact charged more than $3.00 per day for transportation or whether those who were charged for equipment were charged for equipment "required by the work." But Pacesetter also argues that there are legitimate, legally permissible reasons for the transportation and equipment charges. The proposed class definitions are not, therefore, fail-safe classes"); *Butela v. Midland Credit Mgmt.*, 2022 U.S. Dist. LEXIS 76602, *43, 2022 WL 1237047, *17-18 (W.D. Pa. 4/27/2022) (MCM argues that the class is an "unascertainable fail-safe class" because "[FDCPA] liability is the linchpin of class membership"; but "[t]he modified class definition is not "framed as a legal conclusion" .... Nor does it "preclude the possibility of an adverse judgment against class members"; "individuals can be class members and yet still not have valid claims"). The district court decisions already cited in the Petition are reproduced in the footnote

below.[5]

_____

[5] *See Sagar v. Kelly Automotive Group, Inc.*, 2021 WL 5567408, *7, 2021 U.S. Dist. LEXIS 227781, *20 (D. Mass. 11/29/2021) (despite defendant's argument that proposed class "is an impermissible 'fail-safe class,'" "[t]his class, defined by the objective fact of placing a number on the Do Not Call Registry, is not impermissibly based on a legal conclusion"); *McCullough v. City of Montgomery*, 2021 WL 2044900, *12, 2021 U.S. Dist. LEXIS 96861, *34-35 (M.D. Ala. 5/21/2021) ("so-called 'fail-safe class' is one that 'require[s] a court to decide the merits of prospective individual class members' claims to determine class membership.' Yet that's not what the proposed class definition does"; the class definition "does not turn on the merits"); *In re Toll Roads Litig. Penny Davidi Borsuk*, 2020 WL 9597845, *5, 2020 U.S. Dist. LEXIS 254278, *18 (C.D. Cal. 12/30/2020) (the "Class Certification Order redefined the proposed class to avoid a 'fail-safe class' by focusing on the [Personally Identifiable Information] transfers themselves, not whether those transfers violated privacy rights"); *Brown v. DirecTV, LLC*, 330 F.R.D. 260, 268 (C.D. Cal. 3/29/2019) ("Plaintiff's Claim is not fail-safe" but "is defined using objective criteria"); *Mattson v. New Penn Fin., LLC*, 2018 WL 6735088, *4, 2018 U.S. Dist. LEXIS 218627, *10 (D. Or. 11/6/2018) ("a class definition is not fail-safe where 'membership in th[e] class can be readily determined by objective criteria'...; [a]t this early phase in the litigation, prior to discovery, it is unclear whether a determination of consent involves a legal analysis regarding each individual or can be objectively determined from the evidence"); *Doe v. Trinity Logistics, Inc.*, 2018 WL 1610514, *12, 2018 U.S. Dist. LEXIS 56254, *32 (D. Del. 4/3/2018) (despite defendants' contentions that it was "fail-safe," "plaintiff's Class definition uses language that is legally objective and non-conclusory in defining potential class members"); *Johansen v. One Planet Ops, Inc.,* 2018 WL 1558263, *3, 2018 U.S. Dist. LEXIS 47776, *7 (S.D. Ohio 3/5/2018) (rejecting argument that class definition was "fail-safe," when the proposed class "may include those who are entitled to relief, and it may include those who are not entitled to relief"); *Snyder v. Ocwen Loan Servicing, LLC*, 258 F.Supp.3d 893, 903 (N.D. Ill. 2017) ("plaintiffs' class definition does not so clearly present a fail-safe class as to justify denying certification or rewriting the limited class definition"); *Grubb v. Green Tree Servicing, LLC*, 2017 WL 3191521, *15, 2017 U.S. Dist. LEXIS 117465, *44 (D.N.J. 7/26/2017) ( Plaintiff's proposed class "does not constitute an impermissible 'fail-safe' class, because the definition uses language that is legally objective and non-conclusory in defining the potential members"); *Melgar v. CSK*

**C.     When a "Fail-Safe" Issue Cannot Be "Avoided" or "Solved" by Revising the Class Definition, There Usually Is an Issue With "Commonality," as There Was in *Campbell*.**

A class definition with a "fail-safe" issue can "almost always" be revised to define the class "independent of merits success" and thereby avoid or solve any issue. Bone, "Justifying Class Action Limits," *supra*, 65 *Kan. L. Rev.* at 924; *Messner, supra*, 669 F.3d at 825 (the "fail safe problem ... can ... be solved by refining the class definition"). If a statutory claim, like Ms Juneau's claim to counting "non-participating service" under ERISA, has factual elements, the

---

*Auto, Inc.*, 2015 WL 9303977, *8, 2015 U.S. Dist. LEXIS 170833, *21 (N.D. Cal. 12/22/2015) ("Fail-safe classes are defined by the merits of their legal claims, and are therefore unascertainable prior to a finding of liability in the plaintiffs' favor"; "[t]hat is not the case here"); *Weidenhamer v. Expedia, Inc.*, 2015 WL 7157282, *17, 2015 U.S. Dist. LEXIS 154750, *46 (W.D. Wash. 11/13/2015) ("[c]ertainly, the class is not defined in the best possible manner, but its definition does not necessarily presuppose liability"; "[a]s such, the Court finds that the MOBILEGO class is not failsafe"); *Panacci v. A 1 Solar Power, Inc.*, 2015 WL 3750112, *8, 2015 U.S. Dist. LEXIS 77294, *23 (N.D. Cal. 6/15/2015) ("Plaintiff's class definitions are not fail-safe. Membership in both of Plaintiff's proposed classes can be determined without reaching any legal conclusions"; *Donaca v. Metro. Life Ins. Co.*, 2014 WL 12597152, *2, 2014 U.S. Dist. LEXIS 198899, *6 (C.D. Cal. 1/22/2014) ("Donaca's class definition, while overbroad, does not require the court to determine the merits of individual class members' claims in order to determine if they are members of the class"); *Kenneth R. v. Tri-County CAP, Inc. v. Hassan*, 293 F.R.D. 254, 264 (D.N.H. 9/17/2013) ("proposed class here is appropriately defined"; the proffered revision made class definition "sufficiently definite" by providing "some objective and relevant limiting criteria"); *Perez v. State Farm Mut. Auto. Ins. Co.*, 2011 U.S. Dist. LEXIS 164821, *10 (N.D. Cal. 7/5/2011) ("the determination of whether a part would 'significantly lessen the quality of [an] automobile's repair' is a factual determination, not a legal one. Accordingly, the Court finds that Plaintiffs do not propose a 'fail safe' class").

revised definition can "almost always" eliminate the legal conclusion and draw

out additional factual elements leading up to that conclusion.

When a fail-safe issue with a class definition cannot be "avoided" or

"solved" to make the definition "independent of merits success," this usually

means there is an issue with satisfying the "commonality" requirement, as was

found in *Campbell, supra,* 311 F.Supp.3d at 314. In *Campbell,* the problem was

that prosecution of the case required "individualized merits determinations as to

whether the individual suffered discrimination" with no "common" answers. *Id.*;

a*ccord, Cherry v. Dometic Corp.*, *supra*, 986 F.3d at 1303 (11th Cir. 2021) ("if a

class is defined in terms so vague as to be indeterminate, then a district court

lacks a way to assess whether 'there are questions of law or fact common to the

class'").

The District Court tried to bolster its reliance on *Campbell* by saying that

"numerous district courts throughout the country have applied the rule against

fail-safe classes in denying class certification," citing three district court

decisions from other circuits. JA642 (Mem. Op. at 9 n.4). But the cited decisions

were ones that, like *Campbell,* "fit[] squarely within the definition of a 'fail-safe

class" and could not be "remedied by refining the class definition," *Bais Yaakov*

*of Spring Valley v. ACT, Inc.*, 328 F.R.D. 6, 14 (D. Mass. 10/24/2018), *aff'd*, 12

F.4th 81 (1st Cir. 2021), because the plaintiffs had "not proposed an alternative,

42

workable definition." *Day v. Humana Ins. Co.*, 335 F.R.D. 181, 200 (N.D. Ill. 6/1/2020), and "no alternative definition of an ascertainable class is readily apparent." *Quevedo v. Macy's, Inc.*, 2011 WL 13124445, *6 (C.D. Cal. 3/9/2011). In *Bais Yaakov*, the First Circuit said that even in arguing on appeal that the district court should be directed "to consider revising the class definitions," Bais Yaakov was able to offer "no means by which to answer th[e] crucial question on a common basis." 12 F.4th at 93.

Unlike *Campbell* and these out-of-district cases, the revised class definition in this case sets out "objective criteria" related to the "common" issues from which the members of the class can be ascertained. *Compare* pp. 14-15 above *with* 311 F.Supp.3d at 312-315. As in *In re Louisville-Jefferson Cnty*, *supra,* the language "presuming liability" has been deleted from the definition's text in favor of "objective criteria," and there is no question that the members of the class will be bound by the judgment, "whether or not favorable to the class."

III. **Plaintiffs' Renewed Motion Addressed the "Additional Impediments" Identified in the District Court's October 7, 2020 Decision that a Footnote in the March 22, 2022 Decision Erroneously Said "Remain."**

In addition to the Hilton Defendants raising the "fail-safe" issue with "[h]ave vested rights to retirement benefits" for a proposed Rule 23(b)(2) class, they contested whether the proposed second and third subclasses satisfied commonality and typicality requirements. JA184-186, 197-199. The District

Court's October 7, 2020 decision adopted some of these arguments, describing

them as "additional impediments [or "barriers"] to class certification." JA241,

250 (Mem. Op. at 1, 10).

Plaintiffs' renewed motion and reply addressed each of these problems, *see*

JA285-289, 292-293, 299-301, and provided related evidentiary support, JA329-

331, 358-395, but the March 22, 2020 decision did not discuss that response or

evidence. Instead, the District Court dropped a footnote at the end of its Opinion

that:

> Although the problems with the second and third proposed subclasses as
> explained in the Court's [October 7, 2020] Memorandum Opinion remain,
> *id.* at 10-16, the Court need not reach them here, having concluded that the
> broader class definition is an impermissible "fail-safe."

JA643 (Mem. Op. at 10). To avoid another round of motions and potentially

another interlocutory appeal or a "death knell" to this litigation, this Court has the

discretion to reach these issues. In circumstances like these, appeals courts have

applied the principles from *Singleton v. Wulff*, *supra*, 428 U.S. at 121. For

instance, in *Cty. Bd. v. Express Scripts Pharm., Inc*., 996 F.3d 243, 254 (4th Cir.

2021), the Fourth Circuit found "that judicial economy favors our resolution of

the remaining issues. The issues have been fully briefed and resolving them

without a remand will allow Arlington to litigate the merits of its case as swiftly

as possible without the possibility of another appeal based solely on jurisdictional

grounds." *Accord, Connecticut v. Am. Elec. Power Co.*, 582 F.3d 309, 349 (2d Cir. 2009) ("Defendants have also argued--here and before the district court--that Plaintiffs have failed to state a claim under the federal common law of nuisance....The district court did not reach this issue,... In the interest of judicial economy, we exercise our discretion to address the question now, which has been fully briefed to this Court"); *Finnegan v. Fountain*, 915 F.2d 817, 822 (2d Cir. 1990) ("[t]o avoid a second appeal on this issue" "[w]e take this opportunity to consider an issue decided by the district court and almost certain to appear again on re-trial"). Consistent with this discretion, this Court's June 29, 2022 Per Curiam Order "direct[s]" the parties "to address in their briefs" not the "fail-safe" issue alone, but "whether the district court properly denied the plaintiffs' motion for class certification under Fed. R. Civ. P. 23."

### A.     The Renewed Motion Addressed the Problems the District Court Identified with the Subclass for "Non-Participating Service."

In August 2017, the District Court rejected Defendants' motion to dismiss two of the three issues defined for the second subclass. The District Court ruled that Plaintiffs have "pleaded sufficient factual matter to stake out a plausible claim under Rule 12(b)(6)" that:

(i) the Hilton Defendants "made inconsistent determinations [in *Kifafi*] regarding vesting credit for non-participating properties" and

(ii) "records requested and received from [the Hilton] Defendants do

45

not identify any non-participating property that is also not a Related Company."

JA20. Those claims were set out in the proposed class definition that the District Court reviewed, and neither the Defendants nor the District Court contended that those parts of the class definition were "fail-safe" or otherwise problematic.

The October 7, 2020 Memorandum Opinion identified a "problem" concerning a third common issue of whether "'non-participating service' was rendered while Hilton Hotels was 'the employer' under ERISA §3(5)" of the members of the proposed subclass. The District Court opined that this was described in a "fail-safe" manner (the revision to which has already been discussed), and then separately added that this issue "is not susceptible to common resolution amongst the proposed class." JA252 (Mem. Op. at 12). According to the District Court's October 7, 2020 Opinion, the "problem" is that "the recognition of an 'employer' under ERISA §3(5) ... requires an individualized assessment of the management relationship in effect with each of the individual[] non-participating properties at issue" and "will turn on [Hilton's] specific contractual relationship with each of the various non-participating properties, not a uniform policy." *Id.*

In response to the District Court's assertion that this issue depends on an "individualized assessment" with no "common" issues or aspects, Plaintiffs'

46

renewed motion presented more documentary evidence obtained in class
discovery about the "common" provisions in Hilton Hotels' "managed property
agreements." JA358-375. That evidence showed how the "managed
property agreements" uniformly provide Hilton with the power to "hire, promote,
discharge, and supervise" the employees who work at the Hilton properties that
operate under such agreements. *Id*. To further back up the uniform language in
the managed property agreements, Plaintiffs showed that Hilton's 2018 10-K
certified that "more than 169,000 people were employed at our managed, owned
and leased properties and at our corporate locations." JA383-384. Plaintiffs also
discussed the holding in *Falk v. Brennan*, 414 U.S. 190, 195 (1973), that "the
expansiveness of the [Fair Labor Standard] Act's definition of 'employer,'" on
which the ERISA definition is based, and the management company's
"substantial control of the terms and conditions of the work of these employees"
make the management company the "employer" of the employees. Plaintiffs
further cited more recent decisions in this jurisdiction on "joint employers," *e.g.*,
*Harris v. Medical Transp. Mgmt.*, 300 F.Supp.3d 234, 240-46 (D.D.C. 2018).

Hilton's opposition to the renewed motion tried to sweep away the
common provisions in its own managed property agreements, saying that the
quoted agreements represented only a "selection" of five out of a dozen such
agreements. JA426. However, the five managed property agreements from which

47

Plaintiffs quoted represented *all* of the managed property agreements that Hilton has produced in "class discovery" as "reasonably available," JA319, and Hilton's opposition to the renewed motion provided no managed property agreements or other evidence inconsistent with the provisions found in that discovery.

The record below thus did not support the District Court's conclusion that the issues related to whether Hilton is the "employer" are all "individualized" from property to property such that this issue is "not susceptible to common resolution." The District Court failed to consider significant evidence on the "common" aspects involved with Hilton's managed property agreements and the absence of any evidence to the contrary. *See, e.g., Bellagio, LLC*, *supra*, 863 F.3d at 847.

The District Court's October 2020 Memorandum Opinion alternatively criticized Plaintiffs' non-participating service subclass definition for including "at least 29 claimants for whom Hilton has allegedly kept inadequate records [of non-participating service] and has failed to apply the proper time 'equivalencies' for those undocumented periods of employment." JA253 (Mem. Op. at 13). The District Court said that Plaintiffs were thereby "fold[ing] a unique ERISA issue into the non-participating service subclass." *Id*.

Plaintiffs' renewed motion responded that this was *not* a "unique ERISA issue" because the common aspect or issue is that Hilton is not counting service

with "non-participating properties" and that the District Court already found in

*Kifafi* that "no one [at Hilton's Plan] kept track of the non-participating

properties' employees (hours/earnings) to give them vesting." 616 F.Supp.2d at

19. Plaintiffs' renewed motion presented the claim denials from the Hilton

Defendants stating that the reason Ms. Juneau and 29 others lacked sufficient

hours or earnings for non-participating properties was because "the Plan" did not

keep such records. *See* JA292-293 and *see, e.g.*, JA584 (denial letter to Eva

Juneau based on "the Plan's records" of her nonparticipating service).

Even if the absence of "Plan" records of hours/earnings at "non-

participating properties" was considered to be a unique issue from not counting

service at the non-participating properties, it would not be a ground for denying

class certification, but would be a ground for considering another subclass.

Plaintiffs' renewed motion said that if the District Court did not, in its discretion,

want to certify a single "non-participating service" subclass that includes the non-

participating service for which "the Plan" did not keep records of hours or

earnings, it could certify another "non-participating service" subclass with Ms.

Juneau leading both. JA293. Plaintiffs' request is in line with Fed. R. Civ. P.

23(c)(5) which provides that "[w]hen appropriate, a class may be divided into

subclasses that are each treated as a class under this rule." In *Fink v. Nat'l Sav. &*

*Trust*, 772 F.2d 951, 961 (D.C. Cir. 1985), this Circuit ruled that a district court

49

had an obligation to look at subclasses in an ERISA action like this and remanded to "consider to what extent the fashioning of subclasses would cure any alleged defects of the class." In *D.L. v. District of Columbia*, 713 F.3d at 129, this Court likewise remanded to see if subclasses could be certified. On remand, the district court certified four subclasses in *D.L.* which this Court affirmed on a second appeal. *See* 860 F.3d at 724. In this case, the District Court cited *D.L.* as authority against "collaps[ing] distinct legal issues ... into a single subclass," JA253 (10/7/20 Mem. Op. at 13), but it failed to recognize that on remand four subclasses were certified.

### B.  The Renewed Motion Also Addressed the "Problem" the District Court Identified With the Subclass for "Heirs and Estates."

The October 7, 2020 Memorandum Opinion stated that there was an additional "problem" with certifying the third proposed subclass led by Peter Betancourt because Hilton had asserted a limitations defense to his claim and that this "additional grounds for Mr. Betancourt's denial" is not simply an "ancillary litigation defense" but involves "fundamental components of Mr. Betancourt's claim placing him outside the definition of the very subclass he purports to represent." JA256 (Mem. Op. at 16).

In response, Plaintiffs' renewed motion offered evidence along with controlling circuit and Supreme Court precedent: First, Plaintiffs demonstrated

50

that Hilton's limitations defense is in no way "unique" to Peter Betancourt

because Hilton added the same defense to its denial letters to about half of the

subclass. JA299, 319-320, 386-395. Second, Plaintiffs showed that Hilton's

limitations defense cannot be considered "fundamental" because it is *not* a viable

defense in light of the facts and this Court's 2012 ruling in *Kifafi* that "the

requirement that the repudiation [of a claim for purposes of starting the

limitations period] be clear and made known to the plan beneficiaries is not an

idle one," 701 F.3d at 729, and the unanimous holding in *Intel Corp. Inv. Policy

Comm. v. Sulyma,* 140 S.Ct. 768, 775-76 (2020). that "actual knowledge" of a

fiduciary breach or violation to start the limitations period in ERISA §413 "must

be more than 'potential, possible, virtual, conceivable, theoretical, hypothetical,

or nominal.'"

 In relation to this, Plaintiffs presented additional evidence to rebut Hilton

unsupported assertion, through its counsel, that Peter Betancourt's parents were

somehow on notice of their rights to vested retirement benefits such that they

should have claimed those benefits before they passed away in 1985 and 1998.

Plaintiffs showed that the Hilton Plan's records prove that the Hilton Defendants

only recategorized Pedro Betancourt from "Non-Vested Term[ination]" to

"Vested," ***in 2015***, JA329-330, which was literally decades ***after*** Mr.

Betancourt's parents had passed away.

51

As Judge Kotelly ruled in another class action, *Meijer, Inc. v. Warner Chilcott Holdings Co.*, 246 F.R.D. 293, 302 (D.D.C. 2007), there is no basis for denying a motion to certify a class based on an affirmative defense "unless it will skew the focus of the litigation and create a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it." *Accord, Coleman v. Dist. of Columbia*, 306 F.R.D. 68, 83-84 and 87 n.9 (D.D.C. 2015). Here, there is no basis in this record or the case law for concluding that Mr. Betancourt faces any limitations "defenses unique" to him or his parents with which he should be "preoccupied." *See also Fink, supra*, 772 F.2d at 960-61 (reversing when there were no findings of basis for ruling on typicality).

**Conclusion**

For the foregoing reasons, Plaintiffs' Petition for Leave to Appeal Under FRCP 23(f) should be granted and the District Court's March 22, 2022 denial of the motion to certify on the basis that the proposed definition as presently defined "remains" a "fail-safe" definition should be reversed. No court has adopted a "categorical rule" under which a motion to certify is denied based on a defendant's labeling of a proposed class definition as "fail-safe" without conducting a threshold analysis to show that this label "fits squarely"– even when the definition has been revised to include only "objective criteria" as the district court instructed. Plaintiffs respectfully request that this Court also reach the additional

"impediments" or "problems" to certification that the District Court reserved and

remand with instructions to certify the class.

Dated: August 22, 2022

Respectfully submitted,

/s/ Stephen R. Bruce
Stephen R. Bruce
1667 K St., NW, Suite 410
Washington, DC 20006
202-289-1117
stephen.bruce@prodigy.net

Attorney for Plaintiffs-Petitioners-
Appellants

## Certificate of Compliance with FRAP 32(a)

I hereby certify that the foregoing Brief of the Plaintiffs-Petitioners-Appellants complies with the type-volume limitation of FRAP 32(a)(7)(B)(i) because this brief contains 12,898 words, excluding the parts exempted by FRAP 32(f) and Circuit Rule 32(e)(1), and that it complies with the typeface requirements of FRAP 32(a)(5) and the type style requirements of FRAP 32(a)(6) because this brief was prepared in a proportionally-spaced typeface using WordPerfect X4 with a Times New Roman 14 point font in text and footnotes.

Dated August 22, 2022

/s/ Stephen R. Bruce
Stephen R. Bruce
Attorney for Plaintiffs-Petitioners-Appellants

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on August 22, 2022, Petitioners-Appellants Opening

Brief and the Joint Appendix, Volumes I to II, were filed electronically and served

through the CM-ECF system on the attorney for the Defendants-Respondents-

Appellees listed below:

> Jonathan K. Youngwood
> Simpson Thacher & Bartlett LLP
> 425 Lexington Ave.
> New York, NY 10017

I further certify that the original and eight paper copies of the Opening

Brief, plus seven paper copies of the Joint Appendix, Volumes I to II, will be filed

within one business day of the electronic filing with Mark Langer, Clerk of the

Court, 333 Constitution Ave., NW, Room 5523, Washington, DC 20001 (202-216-

7000).

Dated August 22, 2022

> /s/ Stephen R. Bruce
> Stephen R. Bruce
> Attorney for Plaintiffs-Petitioners-
> Appellants