**ORAL ARGUMENT SCHEDULED FOR NOVEMBER 15, 2022**

**No. 22-8001**

# United States Court of Appeals
# for the District of Columbia Circuit

VALERIE WHITE, EVA JUNEAU, and PETER BETANCOURT,
individually and on behalf of all others similarly situated,

*Plaintiffs-Petitioners-Appellants,*

*v.*

HILTON HOTELS RETIREMENT PLAN, HILTON WORLDWIDE, INC.,
GLOBAL BENEFITS ADMIN. COMMITTEE, *et al.,*

*Defendants-Respondents-Appellees.*

*On Petition and Appeal from the United States District Court
for the District of Columbia No. 1:16-cv-00856-CKK*

# REPLY BRIEF FOR PLAINTIFFS-PETITIONERS-
# APPELLANTS

STEPHEN R. BRUCE
STEPHEN R. BRUCE LAW OFFICES
1667 K Street, NW, Suite 410
Washington, DC 20006
(202) 289-1117
stephen.bruce@prodigy.net

*Attorney for Plaintiffs-Petitioners-
Appellants*

# Table of Contents

Summary of Reply. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.     Plaintiffs' Petition Presents "Circumstances" in Which Interlocutory
       Rule 23(f) Certification "Ordinarily Is Appropriate," Including that the
       District Court Has Advised that the Issue Is "Unsettled and Fundamental". 4

II.    The Proposed Class Definition Is Not a "Fail-Safe" Definition and It
       Should Therefore Not Have Been the Basis for Denying Class
       Certification. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

       A.     The Proposed Class Definition Uses "Objective Criteria" to
              Define the Class. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

       B.     Under the Class Definition and Rule 23(c)(3), Any Judgment
              Will Bind Class Members, "Whether or Not Favorable to the
              Class". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

       C.     Plaintiffs Have Cited Two Dozen Cases in Which Defense
              Labeling of Proposed Classes as "Fail-Safe" Have Been Rejected . 18

III.   The Denial of Class Certification Should Be Reversed with Instructions
       to Certify the Class. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

       A.     The "Problems" with the Second "Non-Participating Service"
              Subclass Have Been Addressed, Including that Under *Fink* and
              *D.L.* an Additional Subclass Can Be Certified. . . . . . . . . . . . . . . . . 21

       B.     The "Problem" with the Third Subclass' Representative Being
              "Preoccupied" With a "Unique" Limitations Defense Is Without
              Merit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

       C.     Defendants' Other Arguments, Including About the "Scope of
              the Claims Procedures in *Kifafi,*" Were Not Presented Below. . . . . 25

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

## <u>Table of Authorities</u>

## Cases

*Abbas v. Foreign Policy Group, LLC*, 783 F.3d 1328 (D.C. Cir. 2015)...... 21

*Afghan & Iraqi Allies v. Pompeo*, 334 F.R.D. 449 (D.D.C. 2020)...... 1, 18-19

*Amchem Products, Inc., v. Windsor*, 521 U.S. 591 (1997). .......................... 9

*Asher v. Baxter International*, 505 F.3d 736 (7th Cir. 2007)........................ 5

*Bais Yaakov of Spring Valley v. ACT, Inc.*, 12 F.4th 81 (1st Cir. 2021). ..... 10

*Blount v. United States*, 860 F.3d 732 (D.C. Cir. 2017), *cert. denied*, 138
    S.Ct. 1569 (2018). .................................................................. 21

*In re Brewer*, 863 F.3d 861 (D.C. Cir. 2017)............................................. 6-7

*Brown v. District of Columbia*, 928 F.3d 1070 (D.C. Cir. 2019)................ 26

*Campbell v. AMTRAK*, 311 F.Supp.3d 281 (D.D.C. 2018)..................... 3, 10

*In re D.C. Water & Sewer Authority*, 561 F.3d 494 (D.C. Cir. 2009). .......... 5

*D.L. v. District of Columbia*, 302 F.R.D. 1 (D.D.C. 2013)................. 9, 11-12

*D.L. v. District of Columbia*, 713 F.3d 120 (D.C. Cir. 2013). ........... 3, 22, 26

*D.L. v. District of Columbia*, 860 F.3d 713 (D.C. Cir. 2017)..................... 22

*Faciane v. Sun Life Assur. Co.*, 931 F.3d 412 (5th Cir. 2019).................... 23

*Falk v. Brennan*, 414 U.S. 190 (1973). ....................................................... 22

*Fink v. National Sav. & Trust,*, 772 F.2d 951 (D.C. Cir. 1985).......... 3, 21-22

*Intel Corp. Investment Policy Comm. v. Sulyma*, 140 S.Ct. 768 (2020)...... 23

*J.D. v. Azar*, 925 F.3d 1291 (D.C. Cir. 2019). .................................... 9, 11-12

*In re James*, 444 F.3d 643 (D.C. Cir. 2006). ................................................. 26

*In re Johnson*, 760 F.3d 66 (D.C. Cir. 2014). ............................................... 6

*Kifafi v. Hilton Hotels Ret. Plan,* 701 F.3d 718 (D.C. Cir. 2012). ...... 3, 24-25

*Kifafi v. Hilton Hotels Ret. Plan*, 752 Fed.Appx. 8 (D.C. Cir. 2019). ......... 24

*Kifafi v. Hilton Hotels Ret. Plan*, 2022 WL 2280296, 2022 U.S. App.
    LEXIS 17586 (D.C. Cir. 6/24/2022). ...................................................... 17

*In re Lorazepam*, 289 F.3d 98 (D.C. Cir. 2002). ..................................... 6, 26

*In re Louisville-Jefferson Cnty.,*, 2022 U.S. App. LEXIS 12150 (6th Cir.
    5/4/2022). ............................................................................................. 1-2

*Mass. Mutual Life Insurance Co. v. Russell*, 473 U.S. 134 (1985). ............. 12

*In re McCormick & Co.*, 422 F.Supp.3d 194 (D.D.C. 2019). ...................... 9

*Meijer, Inc. v. Warner Chilcott Holdings Co.*, 246 F.R.D. 293
    (D.D.C. 2007). ...................................................................................... 25

*Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802
    (7th Cir. 20212). ................................................................ 1-2, 10, 15, 19

*Mullins v. Direct Digital, LLC*, 795 F.3d 654 (7th Cir. 2015),
    *cert. denied*, 577 U.S.1138 (2016) ...................................................... 19-20

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
    31 F.4th 651 (9th Cir. 2022) . ......................................................... 10, 15

*Ramirez v. United States Immigration & Customs Enf't*, 338 F.Supp.3d 1
    (D.D.C. 2018). ................................................................................. 1, 18

*Shane Villarino v. Pacesetter Personal Serv.*, 2022 WL 2308701,

2022 U.S. Dist. LEXIS 117138 (S.D. Fl. 5/19/2022). ........................... 17

*Shook v. El Paso Cnty.*, 386 F.3d 963 (10th Cir. 2004), *cert. denied*, 544 U.S. 978 (2005). .................................................................... 11

*Thorpe v. District of Columbia*, 303 F.R.D. 120 (D.D.C. 2014). ................. 9

*In re Veneman*, 309 F.3d 789 (D.C. Cir. 2002). ....................................... 6

*Wagner v. Taylor*, 836 F.2d 578 (D.C. Cir. 1987). ...................................... 9

*Yaffe v. Powers*, 454 F.2d 1362 (1st Cir. 1972). ......................................... 11

*Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532 (6th Cir. 2012). ...................................... 1-2, 13-14, 17, 19-20

## Statutes and Rules

28 U.S.C. 1292(b). .............................................................................. 4

28 U.S.C. 1292(e). .............................................................................. 4

Fed. R. Civ. P. 8(d) ........................................................................... 12

Fed. R. Civ. P. 23(b). ................................................................. 11-13, 16, 27

Fed. R. Civ. P. 23(c)(1). ................................................................. 9-11

Fed. R. Civ. P. 23(c)(3). ................................................................. 1, 16-17

Fed. R. Civ. P. 23(f). ................................................................. 4-6, 8, 26

## Miscellaneous

Advisory Committee Notes to 1998 Amendments on Rule 23(f) .............. 6-7

Robert G. Bone, "Justifying Class Action Limits," 65 *Kan. L. Rev.* 913 (2017). ....................................................................................... 2

**Summary of Reply**

Plaintiffs' proposed class definition is *not* for "a class that cannot be defined until the case is resolved on its merits," *see, e.g., Young, infra*, 693 F.3d at 538, but the proposed definition instead describes "objective criteria" with which class membership can be ascertained. Defendants argue that if Hilton prevails, the members of the class would "not be bound by [the] adverse judgment." Opp. at 31. But the class definition and Rule 23(c)(3) expressly provide that they will be.

The Plaintiffs have cited two dozen cases where defendants have labeled proposed classes as "fail-safe" when they were not, including *Ramirez* and, most recently, *Afghan & Iraqi Allies* in this jurisdiction and the Sixth and Seventh Circuit's decisions in *Messner, Young, Mullins*, and *Louisville-Jefferson Cnty. See* Opening Br. at 32-35, 37-41, The progenitor of this line, *Messner v. Northshore Univ. HealthSystem,* 669 F.3d 802, 825 (7th Cir. 2012), determined that "[d]efining a class so as to avoid ... being over-inclusive and, on the other hand, the fail-safe problem is more of an art than a science" so that any problem with a proposed class being "over-inclusive" or "fail-safe" "can and often should be solved by refining the class definition rather than by flatly denying class certification on that basis."

In its October 2020 decision, the District Court adopted *Messner*'s standards in denying the motion to certify **"WITHOUT PREJUDICE**," but after

1

the Plaintiffs refined the class definition to solve those issues, the District Court's March 2022 decision dropped those passages from its discussion of *Messner*, and denied the renewed motion to certify, while recognizing that the basis for that denial was "not entirely settled."

The District Court's March 2022 decision should be reversed for ruling that Plaintiffs' refined definition "remains" a fail safe definition. JA634, 639, 640. The two dozen cases rejecting such labeling show that the District Court should have rejected that label once Plaintiffs refined the proposed definition. For example, *In re Louisville-Jefferson Cnty,*, 2022 U.S. App. LEXIS 12150, *11-12 (6th Cir. 5/4/2022), determined that the "text that could have made the class fail-safe" had been "deleted" and that the definition "therefore does not create a fail–safe class."

If this Court determines that it is appropriate to further address the "unsettled" issue of "fail-safe" definitions, Plaintiffs suggest that if a proposed class definition is "fail-safe" in that it "includes *only* those who are entitled to relief," *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 538 (6th Cir. 2012), this Court should direct the district court to follow *Messner* in refining the definition because the problem can  "almost always" be solved in this manner. Robert G. Bone, "Justifying Class Action Limits," 65 *Kan. L. Rev.* 913 , 924 (2017). If an issue cannot be solved by refining the definition, the district court should examine whether the reason for this is a requirement that Rule 23 expressly addresses, like

2

the requirement in Rule 23(a)(2) to identify "questions of law or fact common to the class." This was the problem in *Campbell v. AMTRAK*, 311 F.Supp.3d 281, 314 (D.D.C. 2018), where the proposed class was defined by whether "Black CBA employees had been discriminated against because of their race or color." That definition was not only a fail-safe definition, but the plaintiff identified nothing beyond "individualized merits determinations" to describe who had "suffered discrimination." *Id.* The First Circuit also found this in *Bais Yaakov of Spring Valley v. ACT, Inc.*, 12 F.4th 81, 93 (2021), where the problem with class definition stemmed from the plaintiff offering "no means by which to answer th[e] crucial question on a common basis." In these cases, no common issues were identified like the issues here about counting "fractional years" and "non-participating service," and making back payments to "heirs and estates."

Finally, this case should be reversed and not remanded to consider the other "problems" referred to in the footnote at the end of the District Court's decision. Plaintiffs already addressed those problems and demonstrated below and here that under *Fink v. National Sav. & Trust* and *D.L. v. District of Columbia, infra*, an additional subclass can be used for the non-participating service subclass. Plaintiffs also demonstrated that the argument that the representative of the third subclass will be "preoccupied" with a "unique" affirmative imitations defense is entirely meritless in light of this Circuit's 2012 ruling in *Kifafi*, 701 F.3d at 729.

3

I.   **Plaintiffs' Petition Presents "Circumstances" in Which Interlocutory Rule 23(f) Certification "Ordinarily Is Appropriate," Including that the District Court Has Advised that the Issue Is "Unsettled and Fundamental."**

Plaintiffs' petition presents each of the "circumstances" in which Rule 23(f) certification "ordinarily is appropriate," including when the District Court has advised that the issue of law is "unsettled and fundamental." Here, the District Court twice advised that the treatment of fail-safe classes is "not entirely settled" or is "unsettled" in this jurisdiction. JA640-641; JA688. The District Court stated that "the D.C. Circuit has yet to examine the rule against fail-safe class definitions and there remains a circuit split on the issue," advising that, in the District Court's view, "whether a fail-safe class definition is permissible is likely an 'unsettled and fundamental issue of law relating to class actions.'" JA688.

The 1998 Advisory Committee Notes on Rule 23(f) recognize that the district court "often will be able to provide cogent advice" on whether to exercise discretion to hear a Rule 23(f) appeal. The role that district court advice plays is similar to district court certification of interlocutory appeals under 28 U.S.C. 1292(b), which makes sense since Rule 23(f) was adopted under the authority of 28 U.S.C. 1292(e).

Hilton nevertheless devotes ten pages, see Opp. at 17-26, to continuing to argue against granting the petition that the June 29, 2022 Order has already

referred to the merits panel. Hilton begins with an argument that Plaintiffs' 14-day

period to appeal started to run with the ruling issued in October 2020 denying the

motion for class certification. *See* Opp. at 17-19; Doc.1943358 at 7-9. Hilton

makes this argument sound slightly more plausible by leaving out that the October

2020 ruling was "**WITHOUT PREJUDICE**," which the District Court stated in

all caps and in bold in four places, JA240, 241, 250, 256, and that the ruling

provided the Plaintiffs with the "opportunity to amend their class definition in

accordance with this Memorandum Opinion." JA250. There is no case law under

which the time to appeal begins to run with a ruling that is "without prejudice"

where the District Court is inviting a renewed motion.[1]

Defendants concede that "to be sure" the District Court said that the March

2022 decision denying certification rests on an "unsettled" issue. Defendants agree

and "respectfully submit that this issue is truly "unsettled"' Opp. at 21. But then,

Defendants spend the next two pages arguing that the fail-safe issue is not "truly

unsettled." *Id.* at 21-23. Those arguments are without merit, as well as difficult to

---

[1] As Plaintiffs' Reply in support of the Petition described (Doc.1943853 at 1-2), Defendants' Opposition to the Petition miscited *In re D.C. Water & Sewer Auth.*, 561 F.3d 494, 496-97 (D.C. Cir. 2009), which held that the denial of a "motion to clarify" an earlier order "did not restart the Rule 23(f) clock." Rather than correct this error, Defendants' Opposition repeats it. Opp. at 17-18. Defendants also miscite *Asher v. Baxter Int'l*, 505 F.3d 736, 739-40 (7th Cir. 2007), which does not even mention a denial of certification "without prejudice."

follow.

Defendants attempt to make a new argument that even if this issue is "unsettled and fundamental," the Petitioner must satisfy an additional condition of "show[ing] that the issue would evade end-of-the-case review." Opp. at 23. The problem with Defendants' new requirement is that this Circuit's description of the "circumstances" in which review "ordinarily is appropriate" describes "an issue ... that is *likely* to evade end-of-the case review." The reason this isn't stated as Defendants would rephrase it is found in the 1998 Advisory Committee Notes. The Advisory Committee Notes show that this Court's discretion is to be "unfettered" and that the premise of interlocutory review of a denial of class certification under Rule 23(f) is that the plaintiffs are "confronted with a situation in which the only sure path to appellate review is by proceeding to final judgment on the merits of an individual claim [or claims] that, standing alone, is far smaller than the costs of litigation." This is the "situation" with which Plaintiffs are confronted here.

Defendants' case support for its new argument is also lacking. Defendants cite this Circuit's decisions in *In re Brewer*, 863 F.3d, 861, 874 (2017); *In re Johnson*, 760 F.3d 66, 76 (2014); *In re Veneman*, 309 F.3d 789, 795 (2002), and *In re Lorazepam*, 289 F.3d 98, 99-100 (2002). *See* Opp. at 21, 23. The latter three cases are all ones in which *the defendants* (the United States in the first two)

sought interlocutory review of *grants* of class certification and the decisions state

that the grants were not likely to evade end-of-the-case review because if the

defendants lost on the merits, they could appeal both the class certification and

merits rulings. Defendants do not even mention this distinction.

In the fourth case, *In re Brewer*, 863 F.3d at 872-74, class certification was

denied on the basis that the named plaintiff lacked standing as a retired employee

to pursue claims for injunctive relief concerning the U.S. Marshall Service's

alleged racial discrimination against active employees. However, the motion of

four current and former employees to intervene had already been *granted* and this

Court held that the class certification was not "likely to evade" review because this

Court was already ordering that the interveners be allowed to file a renewed

certification motion with the interveners as proposed class representatives.

Defendants go on assert that "Plaintiffs' "position suggests that they will

litigate the case to final judgment." *Id*. at 23, cross referencing Section I.D of their

own brief as support. Plaintiffs and their counsel have not made any such decision.

Instead, they are "confronted with [the] situation" that the Advisory Committee

Notes describe in which the District Court's decision on an "unsettled" issue

means that "the only sure path to appellate review is by proceeding to final

judgment" on claims that "standing alone, [are] far smaller than the costs of

litigation." In support, Plaintiffs  produced their fee agreements showing that class

7

counsel took this case on the basis that it would be prosecuted "as a class action in order to benefit the other former and current employees who are similarly situated," and that counsel are covering all "out-of-pocket expenses" in this case" because "this is a class action." JA396, 398, 400. Plaintiffs have further shown that appellate review at the end of the case will not result in a resolution of the case for the plaintiffs on a classwide basis, but would result in a remand or a second round of litigation. Far from overlooking this, Defendants quote Plaintiffs' statement nearly in full. Opp. at 24-25 (quoting Opening Br. at 23-24).

Defendants also argue that Plaintiffs' position that the denial of class certification is a "death knell" "proves too much" because if plaintiffs' argument "were enough, nearly every class action decision ... would be reviewable under Rule 23(f)." Opp. at 25-26. Plaintiffs have, however, shown that this situation is *not* like "nearly every class action decision," because they are faced with a situation where class certification has been denied on the basis of an "unsettled and fundamental" issue even though their individual claims are "too small to support the expense of litigation" to a final judgment which will still not resolve the class claims.

## II. The Proposed Class Definition Is Not a "Fail-Safe" Definition and It Should Therefore Not Have Been the Basis for Denying Class Certification.

*Amchem Prods., Inc., v. Windsor*, 521 U.S. 591, 620 (1997), holds that "[c]ourts are not free to amend [the Federal Rules of Civil Procedure] outside the process Congress ordered." Relatedly, *Wagner v. Taylor*, 836 F.2d 578, 586 (D.C. Cir. 1987), provides that this Court reviews class certification grants or denials "carefully" for "any erroneous application of legal criteria and any abuse of discretion."

The only rule related to class definitions in Rule 23 is Rule 23(c)(1)(B), which provides that "[a]n order that certifies a class action must define the class and the class claims, issues or defenses." The only requirement that district courts within this circuit have found "implicit" in Rule 23(c)(1)(B) is for "definiteness" or the use of "objective criteria." *Thorpe v. District of Columbia*, 303 F.R.D. 120, 139 (D.D.C. 2014) ("definiteness"); *D.L. v. District of Columbia*, 302 F.R.D. 1, 16-18 (D.D.C. 2013) ("definiteness" or "sufficiently definite"); *In re McCormick & Co.*, 422 F.Supp.3d 194, 241 (D.D.C. 2019) ("objective criteria"). "[O]ur court has not addressed whether Rule 23 contains an ascertainability requirement for class certification." *J.D. v. Azar*, 925 F.3d 1291, 1320 (D.C. Cir. 2019). This Court has never found a rule in Rule 23(c)(1)(B) or any part of Rule 23 requiring denial of class certification, rather than refining of a proposed definition, because it is

9

"fail-safe," or has any arguably "fail-safe" language.

The fail-safe "rule" that courts of appeals and district courts have fashioned by implication under Rule 23(c)(1)(B) is to avoid definitions that are "vague" or "subjective" or that otherwise define class membership only based on the ultimate outcome on liability, e.g., all persons "who have been discriminated against because of their race and color in regard to competitive promotion selection." *Campbell*, *supra*, 311 F.Supp.3d at 314.

The circuit court cases that Defendants have cited (*see* Opp. at 30 n.8) are, with a single exception, ones the Plaintiffs have already cited and discussed in the Opening Br. at 30-31. As discussed below at pages 19-20, Defendants selectively quote from those cases and never address the cases that reject defendants' labeling of proposed class definitions as "fail-safe." The only new circuit court case that Defendants cite is *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 669 n .14 (9th Cir. 2022), which follows *Messner* in addressing the related problem of the "over-inclusive" class by holding that such problems "can and often should be solved by refining the class definition rather than by flatly denying class certification on that basis."

Hilton's Opposition makes a key concession on "Rule 23(b)(2) classes," such as the class that Plaintiffs propose, but then promptly tries to take it back.  In response to Plaintiffs' point about Rule 23(b)(2) classes, Opening Br. at 32, Hilton

10

concedes that, "To be sure, some courts have concluded that "precise ascertainability" of every class member is not required in ... Rule 23(b)(2) classes." Opp. at 23. As support, Hilton cites *D.L. v. District of Columbia*, *supra*, 302 F.R.D. at 17, which determined that "in a 23(b)(2) class, notice is not required [pursuant to] Fed. R. Civ. P. 23(c)(2)(A), and defendants are generally bound by any injunction imposed by the court. It is therefore "not clear that the implied requirement of definiteness [or "precise ascertainability"] should apply to Rule 23(b)(2) class actions at all." *D.L.,* in turn, cites *Shook v. El Paso Cnty.*, 386 F.3d 963 (10th Cir. 2004); *Yaffe v. Powers*,454 F.2d 1362 (1st Cir. 1972), which hold that: "Notice to the members of a (b)(2) class is not required and the actual membership of the class need not therefore be precisely delimited." *Yaffe*, 454 F.2d at 1366. *Shook* added that, "In fact, many courts have found Rule 23(b)(2) well suited for cases where the composition of a class is not readily ascertainable; for instance, in a case where the plaintiffs attempt to bring suit on behalf of a shifting prison population." *Id*.

Shook and *Yaffe* have been cited in other circuits, including in *J.D. v. Azar*, *supra*, 925 F.3d at 1319-1320, where this Circuit found, without rejecting or adopting it as a rule, that "the precise membership of a (b)(2) class is considered largely inconsequential" because "the focus in a (b)(2) class is more heavily placed on the nature of the remedy sought, and . . . a remedy obtained by one

11

member will naturally affect the others."

As quickly as Defendants concede that Rule 23(b)(2) classes do not require "'precise ascertainability' of every class member," they try to take it back, arguing this does not apply because Plaintiffs are moving in the alternative for Rule 23(b)(3) certification, with Defendants adding that Plaintiffs "seek damages and not injunctive relief alone." Opp. at 33. Of course, pleading in the alternative does not change the rules applicable to the non-alternative pleading. *See, e.g.*, FRCP 8(d)(2) and (3). Moreover,contrary to what Defendants assert, Plaintiffs have *not* moved, or prayed for, "damages" under the alternate of Rule 23(b)(3) certification because while ERISA permits suits for the recovery of benefits and "appropriate equitable relief," it does not allow suits for "compensatory damages." *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146-48 (1985).

Defendants further try to 'unconcede' the concession about "Rule 23(b)(2) classes," by arguing that "in any event" a Rule 23(b)(2) class still must be "adequately defined," citing *D.L.*, 302 F.R.D. at 17, and that this is "the very rationale underlying the prohibition against fail safe classes." *Id*. at 33. But *D.L.*'s ruling about Rule 23(b)(2) classes would make no sense if "adequately defined" meant the same thing as "precisely ascertainable," and *J.D. v. Azar*, *supra*, 925 F.3d at 1319-1320, declines to hold that (b)(2) classes must be "precisely ascertainable."

12

## A.   The Proposed Class Definition Uses "Objective Criteria" to Define the Class.

In the proposed class definition (quoted in the Opening Br. at 14-15), Plaintiffs set out "objective criteria" from which the members of the class may be ascertained, whether or not notice is required under Rule 23(c)(2). For instance, to define the "fractional years" of service subclass, Plaintiffs use "objective criteria" related to the merits, e.g., referring to the "[u]se of fractional years of service under an "elapsed time" method to count periods of employment" and to the use of such method "with no resolution of whether the fractions constitute a "year of service" under ERISA. Opening Br. at 15. While these criteria are technical, they are not vague or subjective, and they do not depend on whether the Defendants are ultimately required to apply ERISA's year of service regulations to those "fractional years."

Defendants nevertheless assert that whether Valerie White "is a member of the proposed class turns on the Court's determination on whether fractional years of service must be rounded up." Opp. at 35; *id*. at 39 (repeated verbatim). The proposed class definition obviously does not say that. *See* Opening Br. at 15. Instead, it sets out objective criteria related to Ms. White's "fractional years" that, while technical, provide for her inclusion in the class *even if* the District Court were to ultimately decide that her fractional year of service need not be "rounded

13

up" under ERISA. *Id.; see also* Opening Br. at 36-37. Thus, as in *Young*, 693 F.3d at 538, the proposed class does not "include[] *only* those who are entitled to relief."

Defendants recognize that Plaintiffs are contending the proposed "definition contains "objective" criteria,"" but without contesting that, Defendants artfully contend that Plaintiffs "do not identify what those "objective" criteria are." Opp. at 36. Plaintiffs actually give an example that identifies the "objective criteria" on page 38 of the Opening Brief and on page 43 cross-reference to the class definition for more examples.

Plaintiffs' Opening Brief offers the supporting point that Defendants told Plaintiffs' counsel in conferring on class discovery that they know who the class members are, and do not need any assistance in identifying them. Opening Br. at 26. Indeed, Defendants already have prepared worksheets and tables identifying the class members by reasons for the denials. *See* JA338-341, 342-347, 348-352. Not only do Defendants not contest these points, but their Opposition never asserts that they cannot "ascertain" who the members of the class are.

Defendants persist in arguing that "There is no objective way to define who is a member of the class," and that the class definition "necessarily requires an analysis of the validity of an individual's claim rather than any objective fact about them." Opp. at 38. Defendants go on to assert the proposed class definition has "no truly objective criteria." *Id.* at 39. But Defendants never say, or suggest, what is

14

"subjective," "vague," or "indefinite" about the criteria used in the proposed class definition. It seems as if Defendants are suggesting instead that "truly objective criteria" would not be related to the merits. *See, e.g.,* Opp. at 34-35. Of course, class definitions are supposed to use objective criteria related to the merits "so as to avoid ... being over-inclusive and, on the other hand, the fail-safe problem." *Messner, supra*, 669 F.3d at 825; *Olean, supra*, 31 F.4th at 669 n .14.

### B.    Under the Class Definition and Rule 23(c)(3), Any Judgment Will Bind Class Members, "Whether or Not Favorable to the Class."

Instead of arguing that Defendants cannot ascertain who the members of the proposed class are, Defendants concentrate on arguing that the proposed class is "palpably unfair" to Hilton because if Hilton prevailed, the members of the class would "not be bound by [the] adverse judgment." Opp. at 31. Defendants do not explain how they reach that conclusion. If the District Court, for instance, ruled against Valerie White on her "fractional year" claim, how would Ms. White or others in that subclass not be bound by the ruling? There is no way for this to happen, and, as a backstop, Rule 23(c)(3)(A) expressly provides that "[w]hether or not favorable to the class, the judgment in a class action ***must*** ... for any class certified under Rule 23(b)(1) or (b)(2), include and describe those whom the court

finds to be class members." Emph. added.[2]

Without addressing the class definition's words or Rule 23(c)(3), Defendants simply repeat their assertion that "membership in the proposed class turns on the validity of an individual's claim," and that the proposed class definition is "defined by whether an individual has "vested rights" to benefits. Opp. at 33. The proposed class is actually defined by whether individuals "have been denied vested rights to retirement benefits by the Hilton Defendants" for certain reasons, e.g., by not counting years of "non-participating service" with Hilton for vesting. Whether Hilton's denial of vested rights is ultimately ruled to lawful or unlawful, the proposed definition covers the same people.

With respect to the "non-participating service" subclass, Defendants have suggested, moreover, that the District Court could rule that the employees at some managed properties were not subject to Hilton's control. Opp. at 46-48. But if this were true, how would the employees at each such property not be bound by the District Court's rulings? The class definition will not change based on the District Court's ultimate ruling and Rule 23(c)(3) acts as a backstop by providing that the judgment must include those whom the court finds to be class members," "whether or not [the judgment is] favorable to the class."

---

[2] Rule 23(c)(3)(B) provides a nearly identical rule for Rule 23(b)(3) classes pursuant to which the judgment must "specify or describe those ... whom the court finds to be class members" "[w]hether or not [it is] favorable to the class."

In *Young, supra,* 693 F.3d at 538, one of the circuit cases on which the District Court and the Defendants rely, the Sixth Circuit describes a "'fail-safe' class [a]s one that includes *only* those who are entitled to relief." Emph. in original. In this case, the Hilton Defendants assert that the management agreements at each non-participating hotel property are different and that each denial of non-participating service credit will be "claimant-specific." Opp. at 46-48. If the District Court were to determine that to be correct, "Plaintiffs' classes will include both those entitled to relief and those not," *Young*, 693 F.3d at 538, and therefore, as in *Young*, the proposed definition cannot be said to be "fail-safe." *See also Shane Villarino v. Pacesetter Pers. Serv.*, 2022 U.S. Dist. LEXIS 117138, *13-14, 2022 WL 2308701, *4 (S.D. Fl. 5/19/2022) ("Pacesetter also argues that there are legitimate, legally permissible reasons for the transportation and equipment charges. The proposed class definitions are not, therefore, fail-safe classes").

Defendants also argue that there was no abuse of discretion by the District Court in "refusing to refine" the class definition if Plaintiffs did not refine it as the District Court intended. But the District Court's decision nowhere recognizes that it has that discretion, and is refusing to exercise it. In *Kifafi v. Hilton Hotels Ret. Plan*, 2022 WL 2280296 *2, 2022 U.S. App. LEXIS 17586, *4-5 (6/24/2022), Hilton suggested there were "other reasons that justify the Court's decision," but this Court determined that "those substantive assumptions are absent from the

17

District Court's [decision]."

**C.    Plaintiffs Have Cited Two Dozen Cases in Which Defense Labeling of Proposed Classes as "Fail Safe" Have Been Rejected.**

As stated, Plaintiffs' Opening Brief cited two dozen cases where Defendants labeled proposed class definitions as "fail-safe" definitions, but the courts concluded that they were not. *Id*. at 37-41. These cases illustrate how labeling proposed classes as "fail-safe" has developed into a widespread defense practice which demands careful review to ensure that certification under Rule 23 is not unduly restricted.

Two of those cases were in this jurisdiction, *Ramirez v. United States Immigration & Customs Enf't*, 338 F.Supp.3d 1 (D.D.C. 2018), and *Afghan & Iraqi Allies v. Pompeo*, 334 F.R.D. 449 (D.D.C. 2020). Defendants offer no response to the key passage in *Ramirez* that "Plaintiffs have identified clear and objective criteria on which to show membership in the proposed class" and that "to the extent that Plaintiffs rely on a fail-safe definition [by using the phrase "as required by 8 U.S.C. § 1232(c)(2)(B)"], the Court concludes that the class proposed is none the less ascertainable and meets any such requirement for certification." 338 F.Supp.3d at 49. Nor do Defendants respond to the ruling in *Afghan & Iraqi Allies* that:

Defendants also assert that the proposed class is a "fail-safe class"

18

> because class members stand to benefit from success but will not be
> bound by a loss.... That is not the case. If the court were to certify the
> class and find ... that relief was not warranted, res judicata would
> apply to the class members.

334 F.R.D. at 464.

As indicated above, Defendants have further failed to respond to what the

circuit courts outside of this jurisdiction have ruled. Defendants cite *Messner* once

(Opp. at 31), but pay no attention to what *Messner* held about class definitions

being "more of an art than a science" and about "refining the class definition"

rather than "flatly denying class certification on that basis." 669 F.3d at 825.

Defendants also cite *Mullins v. Direct Digital, LLC*, 795 F.3d 654 (7th Cir. 2015),

and *Young, supra,* but avoid what they held.

Plaintiffs' counsel was surprised at what the Hilton Defendants quoted from

*Mullins* (*see* Opp. at 33 n.9), and upon checking found the quote at 795 F.3d at

657, not at 660, and found that in the ellipses, *Mullins*  contrasted "objective

criteria" with "subjective criteria" and stated that "Class definitions have failed

this requirement when they were too vague or subjective, or when class

membership was defined in terms of success on the merits (so-called "fail-safe"

classes)." Defendants also omitted the concluding sentence that, "This version of

ascertainability is well-settled in our circuit, and this class satisfies it." *Mullins*

went on to describe how the class definition in that case "avoids all of these

19

problems. It is not vague. ... The class definition also is not based on subjective criteria.... It also does not create a fail-safe class [because] [i]f Direct Digital prevails, res judicata will bar class members from re-litigating their claims." 795 F.3d at 660-661.

Defendants similarly selectively quote from *Young*, quoting that "[t]here can be no class action if the proposed class is 'amorphous' or 'imprecise,'" and that "a class definition is impermissible where it is [] 'fail safe.'" *See* Opp. at 28 and 30 n.8. Defendants leave out that *Young* defines a fail-safe class as one "that includes *only* those who are entitled to relief" and "that cannot be defined until the case is resolved on its merits." 693 F.3d at 538 (emph. in orig.). Based on this, *Young* concluded that "Plaintiffs' classes will include both those entitled to relief and those not" as proven by "Defendants' other argument—that they are not ultimately liable for many of the class members." *Id*. Here, the Hilton Defendants' "other argument" is that they are ultimately not liable for many of the class members on "claimant-specific grounds," Opp. at 44-45, which also proves Plaintiffs' point that the class "will include those entitled to relief and those not."

### III. The Denial of Class Certification Should Be Reversed with Instructions to Certify the Class.

Defendants assert that this Court "can affirm the March 2022 Order on any ground presented to the District Court." Opp. at 40 (citing *Blount v. United States*, 860 F.3d 732, 741 (D.C. Cir. 2017)). Plaintiffs clarify that this Court can "affirm *or reverse*" on "any ground presented to the District Court," with the qualification that the full statement is  "any ground the record supports" and that the "opposing party had a fair opportunity to address," i.e., that was "fully briefed." *Abbas v. Foreign Policy Group, LLC*, 783 F.3d 1328, 1337 (D.C. Cir. 2015).

### A. The "Problems" with the Second Subclass Have Been Addressed, Including that Under *Fink* and *D.L.* an Additional Subclass Can Be Certified.

Defendants repeat what the District Court's October 2020 decision said about the "problems" with the second "non-participating service" subclass. *Compare* Opp. at 47-48 *with* JA252-254. But Plaintiffs' renewed motion filed in November 2020 and the opening brief filed here addressed the problems the District Court identified in that decision, which was **"WITHOUT PREJUDICE."** In the footnote stating that problems "remain,' the District Court overlooked or misapprehended that. JA685 n.5.  Defendants' Opposition simply reiterates what the District Court said in October 2020, without addressing Plaintiffs' response to it, *i.e.*, how it decided that those problems "remain."

21

Defendants have thus chosen not to respond to the uniform provisions in Hilton's managed property agreements giving Hilton "substantial control of the terms and conditions of the work of these employees" (*Falk v. Brennan*, 414 U.S. 190, 195 (1973), through the power to "hire, promote, discharge and supervise." JA 360-61, 364-65, 367-69, 371, 373-75. This is the record on which the March 2022 decision had to be based, and Defendants must respond to that record, which they have not done.

Defendants have also ignored this Court's precedents about district courts certifying an additional subclass if that is appropriate. *Fink v. National Sav. & Trust,*, 772 F.2d 951, 961 (1985), remanded to "consider to what extent the fashioning of subclasses would cure any alleged defects of the class," and *D.L. v. District of Columbia*, 713 F.3d 120, 129 (2013), likewise remanded to see if subclasses could be certified, which they were. *See D.L. v. District of Columbia*, 860 F.3d 713, 724 (D.C. Cir. 2017).

### B.  The "Problem" with the Third Subclass' Representative Being "Preoccupied" with a "Unique" Limitations Defense Is Without Merit.

Defendants also repeat the District Court's October 2020 ruling that the named representative Peter Betancourt is "atypical" of the heirs and estates subclass without responding to Plaintiffs' demonstration in the renewed motion

22

and the opening brief that Peter Betancourt's parents never had notice that they

should have sued Hilton before they died.  Plaintiffs showed that Hilton did not

categorize Pedro Betancourt as "vested" ***until 2015*** during the remedies stage in

the *Kifafi* litigation, which was decades after he and his wife had died. Opening

Br. at 51 (citing JA329-330).

In regard to when their cause of action accrued, Defendants attempt to limit

*Intel Corp. v. Sulyma*, 140 S.Ct. 768, 775-76 (2020), on the accrual of claims

based on "actual knowledge" to "breach of fiduciary duty claims," which

Defendants say "is different than the standard for benefits claims." Opp. at 53 n.

14. But Defendants overlook that:

> "Accrual of ERISA claims is a question of "federal common law." ...
> Accrual is a simple matter when a claim for benefits has been
> formally made and formally denied. ... To cover less-clear situations,
> circuit courts have applied a form of the standard federal discovery
> rule: a claim accrues when a party has enough information that it
> knows or reasonably should know of the injury or deprivation."

*Faciane v. Sun Life Assur. Co.*, 931 F.3d 412, 418 (5th Cir. 2019). Defendants also

fail to address this Court's 2012 *Kifafi* decision, which Plaintiffs' Opening Brief

and *Faciane* both cite, which held that "the repudiation" of a claim to trigger any

statute of limitations under this federal discovery rule must "be clear and made

known to the plan beneficiaries." 701 F.3d at 729. Because Peter Betancourt's

parents never had actual knowledge or notice of the accrual of this claim, their

ERISA claim could not have accrued as a matter of federal common law while they were alive.

Defendants also argue that the use of identical language (which Defendants soften to "similar language") to deny the benefits of the members of this subclass on limitations grounds "does not mean that individuals' arguments regarding their claim's untimeliness will be the same–that will still turn on individualized factual and legal issues." *Id.* at 53-54. Again, this misapprehends a defendants' ability to avoid common claims and defenses simply by having their counsel deny what is plainly before the court.

Finally, rather than defend the District Court's opinion that the problem "remains," Defendants have come up with a new argument that Peter Betancourt is "atypical" "because his father ... did have a surviving spouse." Opp. at 51. Hilton thus now switches to arguing that Peter Betancourt is "atypical" not because he faces a "unique" limitations defense, but because his mother outlived his father – which mortality and census data as well as common experience shows to be anything but "atypical."

In sum, Plaintiffs have shown that Peter Betancourt has no reason to be "preoccupied" with Defendants' affirmative limitations defense. Defendants perfunctorily cite Judge Kotelly's decision in *Meijer, Inc. v. Warner Chilcott*

*Holdings Co.*, 246 F.R.D. 293 (D.D.C. 2007), *see* Opp. at 53, without distinguishing what *Meijer* actually held about *not* denying a motion to certify a class based on an affirmative defense "unless it will skew the focus of the litigation and create a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it." 246 F.R.D. at 302.

### C.    Defendants' Other Arguments, Including About the "Scope of the Claims Procedures in *Kifafi*," Were Not Even Presented Below.

After stating that this Court can affirm on "any grounds presented to the District Court," Opp. at 40, Defendants present two arguments (at pages 42-43 and pages 44-45) as if they were covered by that principle. But those arguments were *not* presented to the District Court.

As background, this Circuit's 2012 *Kifafi* decision affirms the District Court's remedial order that Hilton "fund and administer a claim procedure open to all participants whose vesting status turns on nonparticipating service." 701 F.3d at 733. *Kifafi*, 752 Fed.Appx. 8, 9 (D.C. Cir. 2019), also makes reference "to the denial of certain vesting claims submitted through Hilton's established claims process" and that the class's "principal objection ... concerns denials based on nonunion nonparticipating service." The claims at issue here come out of that claims process. Without citing either of those decisions, Defendants make a vague argument about the "scope of the claims procedures in *Kifafi*." *See* Opp. at 42-43.

25

That argument is not in the District Court's October 2020 or March 2022 decisions and it was not in Hilton's briefing related to those decisions. Defendants' argument also appears to be "unrelated to the Rule 23 requirements" and thus "well beyond the purpose of Rule 23(f) review." *In re Lorazepam*, *supra,* 289 F.3d at 107; *In re James*, 444 F.3d 643, 646-647 (D.C. Cir. 2006).

Defendants similarly argue that the class lacks any "commonality" because every one of Hilton's denials is "claimant-specific." Opp. at 44-45. But that argument, too, is not in the District Court's decisions or in Hilton's briefing for those decisions. In offering this argument, Defendants ignore *D.L. v. District of Columbia*, *supra*, 713 F.3d at 129, and *Brown v. District of Columbia*, 928 F.3d 1070, 1080, 1082 (D.C. Cir. 2019), which hold that even "a single aspect or feature of the claim [that] is common to all proposed class members" "will do" if "a classwide proceeding" will "generate common answers apt to drive the resolution of the litigation" as compared to "when each individual class member would be entitled to a different injunction." Rather than follow precedent, Defendants argue, for the first time, that each individual's denial in "each subclass" is "claimant-specific" or "claimant-by-claimant." Opp. at 44-45. Defendants try to explain away the common issues reflected in their own documents and denial letters by contending that while the Hilton Committee

26

denied these claims based on "high level categories" using identical "templates" for the denial letters, Hilton was 'beneath the surface' somehow making "specific, claimant-by-claimant decisions." Opp. at 45. No evidence supports Hilton's new theory. Hilton also ignores that dating back to July 2017, the District Court held that "[t]he claims of Plaintiffs White and Juneau, and those of the putative subclasses associated with those claims, may proceed pursuant to ERISA sections 502(a)(1)(B) and 502(a)(3)." JA22.[3]

Alternatively, Defendants seek to keep some defense against class certification in play by requesting a remand on the basis of "additional arguments" that Defendants do not identify but represent not to have "reiterated ... in light of space constraints." Opp. at 41; *see also id.* at 52. Plaintiffs are not aware of what Defendants' "additional arguments" are, and oppose any remand on the basis of the proverbial 'player to be named later.'

**Conclusion**

For the foregoing reasons, Plaintiffs respectfully request that the March 22, 2022 decision of the District Court be reversed and remanded with instructions to certify the proposed class under Rule 23(b)(2).

---

[3] The District Court later recognized that Plaintiffs had "reasonably attempted to address the reasons for which this Court initially dismissed Claim Three," and ruled that Claim Three, too, could proceed. JA26.

27

Dated: October 12, 2022

Respectfully submitted,

/s/ Stephen R. Bruce
Stephen R. Bruce
1667 K St., NW, Suite 410
Washington, DC 20006
202-289-1117
stephen.bruce@prodigy.net

Attorney for Plaintiffs-Petitioners-
Appellants

## CERTIFICATE OF COMPLIANCE WITH FRAP 32(a)

I hereby certify that the foregoing Reply of the Plaintiffs-Petitioners-Appellants complies with the type-volume limitation of FRAP 32(a)(7)(B)(ii) because this brief contains 6,498 words, excluding the parts exempted FRAP 32(f) and Circuit Rule 32(e)(1), and that it complies with the typeface requirements of FRAP 32(a)(5) and the type style requirements of FRAP 32(a)(6) because this brief was prepared in a proportionally-spaced typeface using WordPerfect X4 with a Times New Roman 14 point font in text and footnotes.

Dated: October 12, 2022

/s/ Stephen R. Bruce
Stephen R. Bruce
Attorney for Plaintiffs-Petitioners-Appellants

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on October 12, 2022, Petitioners-Appellants Reply Brief was filed electronically and served through the CM-ECF system on the attorney for the Defendants-Respondents-Appellees listed below:

> Jonathan K. Youngwood
> Simpson Thacher & Bartlett LLP
> 425 Lexington Ave.
> New York, NY 10017

I further certify that the original and eight paper copies of this Reply Brief will be filed within one business day of the electronic filing with Mark Langer, Clerk of the Court, 333 Constitution Ave., NW, Room 5523, Washington, DC 20001 (202-216-7000).

Dated: October 12, 2022

> /s/ Stephen R. Bruce
> Stephen R. Bruce
> Attorney for Plaintiffs-Petitioners-Appellants